[No. S046963. Apr. 18, 1996.]

THE SUPERIOR COURT OF MENDOCINO COUNTY, Plaintiff and
Appellant, v.
COUNTY OF MENDOCINO et al., Defendants and Respondents.

COUNSEL ·

Gray, Cary, Ware & Freidenrich, David B. Geerdes, Merrill F. Storms, Jr., and Mary A. Lehman for Plaintiff and Appellant.

Ian Herzog, Suzanne Leibowitz, Douglas Devries, Leonard Sacks, Bruce Broillet, Steven Kleifield, Wayne McClean, William D. Turley, Robert Steinberg, Roland Wrinkle, Harvey R. Levine, Thomas Stolpman, Tony J. Tanke, Gibson, Dunn & Crutcher, Richard Chernick, Robin H. Wright, Morrison & Foerster, Raymond L. Wheeler, Robert D. Thomas and Su W. Hwang as Amici Curiae on behalf of Plaintiff and Appellant.

McDonough, Holland & Allen, Mark A. Wasser, Don F. Harris and Jan P. Sherry for Defendants and Respondents.

Alan K. Marks, County Counsel (San Bernardino) and Michael A. Markel, Deputy County Counsel, as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

GEORGE, J.—Government Code section 68108[1] authorizes a county, under specified circumstances, to designate "unpaid furlough days" on which the trial courts of the county generally "shall not be in session." In this case, we are called upon to decide whether this statute is unconstitutional on its face. The trial court rejected the facial challenge to the constitutionality of section 68108, but the Court of Appeal disagreed, concluding that the statute represents "a legislative exercise of judicial power" and violates the separation of powers doctrine embodied in article III, section 3, of the California Constitution.

---

[1]Unless otherwise specified, all further statutory references are to the Government Code.

As we shall explain, we conclude that the Court of Appeal erred in finding section 68108 unconstitutional on its face.

I

In 1993, the Legislature enacted section 68108 as part of a measure aimed generally at assisting local governments in meeting their then pressing fiscal concerns. (Stats. 1993, ch. 70, § 3.) The statute was enacted as an urgency measure and took effect on June 30, 1993.

Section 68108 provides that when a county has entered into a "memorandum of understanding" with its employees that designates certain days as "unpaid furlough days" for employees assigned to regular positions in the superior, municipal, and justice courts, "the courts shall not be in session" on those designated days, "except as ordered by the presiding judge upon a finding . . . of a judicial emergency . . . ." The section also provides that although the clerk's office of an affected court shall not be open on unpaid furlough days, each court shall permit documents to be filed on such days at a "drop box" equipped with a mechanism for determining the actual date on which a document is deposited, and further provides that an appropriate judicial officer shall be available on such days to conduct statutorily required arraignments and preliminary examinations and "to sign any necessary documents on an emergency basis."[2]

Shortly after section 68108 was enacted, the Board of Supervisors of Mendocino County (hereafter the Board of Supervisors, or the Board) ratified memoranda of understanding with county employees that provided

___

[2]Section 68108 provides in full: "(a) With respect to the superior, municipal, and justice courts, to the extent that the county's Consolidated Memorandum of Understanding for county employees designates certain days as unpaid furlough days for employees assigned to regular positions in the superior, municipal, and justice courts, including all superior court, municipal court, and county employees assigned to the courts, the courts shall not be in session on those days except as ordered by the presiding judge upon a finding by the presiding judge of a judicial emergency as defined in Chapter 1.1 (commencing with Section 68115). On these furlough days, although the clerk's office shall not be open to the public, each court shall permit documents to be filed at a drop box pursuant to subdivision (b), and an appropriate judicial officer shall be available to conduct arraignments and examinations as required pursuant to Section 825 of the Penal Code, and to sign any necessary documents on an emergency basis. [¶] (b) A drop box shall provide for an automated, official time and date stamping mechanism or other means of determining the actual date on which a document was deposited in the drop box."

Section 68115, which defines the term "judicial emergency" as used in section 68108, provides: "When war, insurrection, pestilence, or other public calamity, or the danger thereof, or the destruction of or danger to the building appointed for holding the court, renders it necessary, or when a large influx of criminal cases resulting from a large number of arrests within a short period of time threatens the orderly operation of a court within a specified county or judicial district, the presiding judge . . . may request and the Chair of the Judicial

for six specified unpaid furlough days during the 1993-1994 fiscal year. (The specified furlough days were Friday, October 8, 1993; Friday, November 12, 1993; Monday, January 3, 1994; Friday, January 14, 1994; Friday, February 18, 1994; and Friday, May 27, 1994.)

The Superior Court of Mendocino County (hereafter the Superior Court) immediately notified the Board of Supervisors that, in its judgment, the court's "particular needs" required it to remain open on the specified furlough days in order to fulfill the court's constitutional duties.[3] The Board of Supervisors, in response, notified the Superior Court that it believed it had the authority under section 68108 to designate and enforce the unpaid furlough days, which called for the closing of all county offices, as well as the justice, municipal, and superior courts, on those days.

On October 8, 1993, and November 12, 1993, the first two designated unpaid furlough days, all county offices and the municipal and justice courts in the county were closed. The Superior Court, however, directed all county employees assigned to the Superior Court to report for work on those dates. On October 14, 1993, and November 19, 1993, the Superior Court issued orders to the Board of Supervisors, the county administrative officer, and the county auditor/controller, directing the county to provide funding for the salaries of the employees assigned to the Superior Court who had worked on the furlough days.

---

Council may . . . by order authorize the court [to take one or more specifically enumerated actions]."

Pursuant to a constitutional amendment approved by the voters in November 1994, all existing justice courts in California became municipal courts, and thus there no longer are any justice courts in this state. (See Cal. Const., art. VI, § 5, subds. (a), (b), as amended Nov. 9, 1994.)

[3]In its letter to the Board of Supervisors, the Superior Court stated that it was notifying the Board of its "particular needs," pursuant to the provisions of section 68073. At that time, section 68073 provided in relevant part: "In each county the board of supervisors shall provide suitable rooms for holding the superior, municipal, and justice courts, for the chambers of the judges of these courts and for court attendants, together with sufficient attendants, heat, light, furniture, . . . and other personal property, for the rooms and chambers and for the transaction of the business of the courts. . . . [¶] If the board of supervisors of any county does not provide suitable rooms for holding the superior, municipal, or justice courts, . . . together with sufficient attendants . . . , *the court shall give notice to the board of its particular needs.* If the board then fails to provide anything necessary to the conduct of the court's functions, the court may direct the appropriate officers of the county to provide the same. The expenses incurred, certified by the judge or judges to be correct, are a charge against the county treasury, and shall be paid out of the General Fund." (Stats. 1984, ch. 1109, § 2, p. 3734, italics added.)

In 1994, section 68073 was modified in a number of respects. (Stats. 1994, ch. 308, § 10, eff. July 21, 1994.)

When the Board of Supervisors failed to comply with these orders, the Superior Court instituted the present lawsuit against the County of Mendocino, the Board of Supervisors, the county administrative officer, and the county auditor/controller (hereafter referred to collectively as the county). The complaint sought declaratory relief, injunctive relief, and the issuance of a writ of mandate directing the county to comply with the Superior Court's orders of October 14 and November 19 and to modify the furlough program to exclude court employees, unless the Superior Court specifically agreed to their inclusion. The county responded by filing its own cross-complaint for declaratory relief, seeking a judicial declaration that, under section 68108, it had the authority to designate unpaid furlough days for all county employees, including those assigned to the Superior Court. The county also filed an answer, denying a number of the allegations contained in the complaint, including the Superior Court's assertion that "any further reductions in the court's staff or working schedule will prevent the court from fulfilling its statutorily and constitutionally mandated duties."

The Judicial Council assigned a judge from another county to hear the case. With the agreement of the parties, the trial court considered the Superior Court's motion for a preliminary injunction and its petition for a writ of mandate at a single consolidated hearing, treating both causes of action as based upon the same substantive claim that section 68108 is unconstitutional on its face insofar as it purports to authorize a county, without the concurrence of the superior court, to designate days on which that court would not be in session. (The parties' respective causes of action for declaratory relief were not considered at the hearing.) After reviewing the parties' written briefs and hearing argument, the trial court rejected the Superior Court's facial challenge to the statute, concluding that section 68108, on its face, does not violate the separation of powers doctrine. Accordingly, the trial court entered a judgment denying the requested writ of mandate, and concluded that that ruling rendered moot the issues raised by the motion for a preliminary injunction.

The Superior Court appealed from the judgment denying its petition for writ of mandate. The Court of Appeal, in a two-to-one decision, concluded that section 68108 on its face violates the Constitution's separation of powers provision, because the statute authorizes legislative exercise of a power reserved to the judiciary, namely "the inherent power of the courts to control their own hours and days of operation, as *they* determine to be appropriate." (Original italics.) The dissenting justice in the Court of Appeal disagreed, concluding that "[w]hile . . . a court might in certain circumstances show that a statute relating to court hours *as applied* precluded it from performing its judicial duties" (original italics), the challenged statute

was not unconstitutional on its face, because it could be applied in a manner that would not have such a deleterious effect.[4]

We granted review to consider the proper application of the separation of powers doctrine in this context.[5]

## II

From its inception, the California Constitution has contained an explicit provision embodying the separation of powers doctrine. (Cal. Const. of 1849, art. III, § 1, now art. III, § 3.) Article III, section 3, provides: "The powers of State government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution."

■ Although the language of California Constitution article III, section 3, may suggest a sharp demarcation between the operations of the three branches of government, California decisions long have recognized that, in reality, the separation of powers doctrine " 'does not mean that the three departments of our government are not in many respects mutually dependent' " (*Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 191 [137 Cal.Rptr. 460, 561 P.2d 1148]), or that the actions of one branch may not significantly affect those of another branch. Indeed, upon brief reflection, the substantial

---

[4]Before reaching the constitutional issue, the Court of Appeal rejected the Superior Court's contention that, as a matter of statutory interpretation, the provisions of section 68108 could and should be interpreted, in light of section 68073 (quoted in fn. 3, *ante*) and related statutes, to require a county to obtain a court's consent before designating furlough days on which the court would not be in session. The Court of Appeal concluded that the language of section 68108 was clear and unambiguous, and did not require the county to obtain the approval of the Superior Court before designating furlough days under the statute. Neither party challenged that aspect of the Court of Appeal's decision, and thus the statutory interpretation question is not before us.

[5]As the Court of Appeal noted, at the time the notice of appeal in this matter was filed the applicable case law indicated that an appeal could be taken from a judgment denying a petition for writ of mandate where no further action on the petition was contemplated, even if, as in the present case, other causes of action still were pending between the parties. (See, e.g., *Bullock* v. *City and County of San Francisco* (1990) 221 Cal.App.3d 1072, 1086-1087 [271 Cal.Rptr. 44]; *Elmore* v. *Imperial Irrigation Dist.* (1984) 159 Cal.App.3d 185, 190-192 [205 Cal.Rptr. 433].) A more recent Court of Appeal decision suggests, however, that no appeal lies in this situation. (See *Nerhan* v. *Stinson Beach County Water Dist.* (1994) 27 Cal.App.4th 536, 540 [33 Cal.Rptr.2d 10].)

The Court of Appeal concluded in the present case that, assuming the *Nerhan* decision is correct, it was appropriate under the unusual circumstances of these proceedings for the appellate court to exercise discretion to treat the appeal as a petition for writ of mandate and address the merits in that context. Neither party has questioned the Court of Appeal's action in this regard, and we have jurisdiction to review the judgment of that court issuing a writ of mandate directed to the trial court. (Cal. Const., art. VI, § 12, subd. (b).)

interrelatedness of the three branches' actions is apparent and commonplace: the judiciary passes upon the constitutional validity of legislative and executive actions, the Legislature enacts statutes that govern the procedures and evidentiary rules applicable in judicial and executive proceedings, and the Governor appoints judges and participates in the legislative process through the veto power. Such interrelationship, of course, lies at the heart of the constitutional theory of "checks and balances" that the separation of powers doctrine is intended to serve.

At the same time, this doctrine unquestionably places limits upon the actions of each branch with respect to the other branches. The judiciary, in reviewing statutes enacted by the Legislature, may not undertake to evaluate the wisdom of the policies embodied in such legislation; absent a constitutional prohibition, the choice among competing policy considerations in enacting laws is a legislative function. (See, e.g., *Werner* v. *Southern Cal. etc. Newspapers* (1950) 35 Cal.2d 121, 129-130 [216 P.2d 825, 13 A.L.R.2d 252].) The executive branch, in expending public funds, may not disregard legislatively prescribed directives and limits pertaining to the use of such funds. (See, e.g., *Assembly* v. *Public Utilities Com.* (1995) 12 Cal.4th 87, 98-104 [48 Cal.Rptr.2d 54, 906 P.2d 1209].) And the Legislature may not undertake to readjudicate controversies that have been litigated in the courts and resolved by final judicial judgment. (*Mandel* v. *Myers* (1981) 29 Cal.3d 531, 547-550 [174 Cal.Rptr. 841, 629 P.2d 935]; *Plaut* v. *Spendthrift Farm, Inc.* (1995) 514 U.S. 211, __ [131 L.Ed.2d 328, 342-346, 115 S.Ct. 1447, 1453-1456].)

In the present case, the Superior Court contends, and the majority in the Court of Appeal concluded, that the Legislature violated the separation of powers doctrine in enacting a measure that purports to regulate when a superior court shall "not be in session." As noted, the Court of Appeal reasoned that, under the California Constitution, "the inherent power of the courts" includes the power of courts "to control their own hours and days of operations, as *they* determine to be appropriate" (original italics), and concluded that the Legislature improperly exercised an exclusively judicial function when it enacted a measure "wrest[ing] that power from the courts."

In reaching this conclusion, the Court of Appeal looked initially to several of this court's prior decisions—*Brydonjack* v. *State Bar* (1929) 208 Cal. 439 [281 P. 1018, 66 A.L.R. 1507], *Millholen* v. *Riley* (1930) 211 Cal. 29 [293 P. 69], *Johnson* v. *Superior Court* (1958) 50 Cal.2d 693 [329 P.2d 5], and *In re McKinney* (1968) 70 Cal.2d 8 [73 Cal.Rptr. 580, 447 P.2d 972]—that addressed the subject of "inherent judicial power" and the validity of legislative actions relating to the judicial branch. We agree that the *Brydonjack*, *Millholen*, *Johnson*, and *McKinney* decisions are an appropriate place to begin our analysis of the Superior Court's separation of powers claim.

In *Brydonjack* v. *State Bar*, *supra*, 208 Cal. 439, the plaintiff initiated a proceeding in this court, seeking admission to the California Bar. The State Bar's Committee of Bar Examiners had recommended against the applicant's admission, and the State Bar contended that, under the applicable provision of the then recently-enacted State Bar Act, this court lacked authority to admit an applicant over the committee's contrary recommendation. The plaintiff argued that the relevant statutory provision should not be construed as rendering a negative recommendation of the committee binding upon this court, and maintained that if the statute were so interpreted, it would amount to an unconstitutional legislative infringement of the court's inherent judicial power.

In addressing the separation of powers issue, the court in *Brydonjack* v. *State Bar*, *supra*, 208 Cal. 439, stated: "Our courts are set up by the Constitution without any special limitations; hence the courts have and should maintain vigorously all the inherent and implied powers necessary to properly and effectively function as a separate department in the scheme of our state government. [Citations.] But this does not mean that the three departments of our government are not in many respects mutually dependent. Of necessity, the judicial department as well as the executive must in most matters yield to the power of statutory enactments. [Citations.] The power of the legislature to regulate criminal and civil proceedings and appeals is undisputed." (*Id.* at pp. 442-443.)

The court in *Brydonjack* continued: "Admission to practice is almost without exception conceded everywhere to be the exercise of a judicial function, and . . . ha[s] also been held to be the exercise of one of the inherent powers of the court. [Citations.] [¶] But the power of the legislature to impose reasonable restrictions upon the practice of the law has been recognized in this state almost from the inception of statehood." (208 Cal. at p. 443.) After reviewing numerous cases that had upheld the validity of legislation setting forth general qualifications for, or restrictions upon, bar membership, or establishing procedures that an applicant must follow in seeking admission (*id.* at pp. 443-444), the court in *Brydonjack* observed: "The sum total of this matter is that *the legislature may put reasonable restrictions upon constitutional functions of the courts provided they do not defeat or materially impair the exercise of those functions.* This power has been described as follows: '. . . [T]he mere procedure by which jurisdiction is to be exercised may be prescribed by the Legislature, unless, indeed, such regulations should be found to substantially impair the constitutional powers of the courts, or practically defeat their exercise.' [Citations.]" (*Id.* at p. 444, italics added.)

With these constitutional principles in mind, the court in *Brydonjack* went on to examine the provision of the State Bar Act in question, and concluded

that the statute did not make binding upon the court the Committee of Bar Examiners' decision regarding admission. (208 Cal. at p. 445.)

A year after the *Brydonjack* decision, in *Millholen* v. *Riley*, *supra*, 211 Cal. 29, this court returned to the question of inherent judicial power. In *Millholen*, a law secretary who had been hired by the Court of Appeal at a salary of $225 per month filed an action against the state when the State Controller refused to pay her salary. The Controller took the position that payment was not authorized, because the terms of the secretary's compensation had not been fixed by the Department of Finance.

After noting that "ample funds appropriated by the legislature for the support and maintenance of the court exist and are available for the liquidation of petitioner's claim" (*Millholen* v. *Riley*, *supra*, 211 Cal. 29, 31), the court in *Millholen* proceeded to examine the relevant statutory provisions and concluded that the Court of Appeal was authorized to hire the secretary and fix her salary, because no statute purported to give any other agency or body the authority to make the appointment or to establish the terms of such employment. In reaching this conclusion, the court found that the statutory provisions relating to the Department of Finance, upon which the Controller had relied, were intended to apply only to executive branch employees and not to persons employed by the judicial branch. (*Id.* at pp. 31-33.)

Thereafter, the court in *Millholen* v. *Riley*, *supra*, 211 Cal. 29, went on to observe that "[w]e may reach the same conclusion in another manner. A court set up by the Constitution has within it the power of self-preservation, indeed, the power to remove all obstructions to its successful and convenient operation. This arises from the fact that it is part of and belongs to one of the three independent departments set up by the Constitution, article VI, section 1." (*Id.* at pp. 33-34.) The court in *Millholen* immediately added a qualification, however: "While the above statement is true, there is this qualification thereof, which has been recognized at all times in this state—the legislature may at all times aid the courts and may even regulate their operation so long as their efficiency is not thereby impaired." (*Id.* at p. 34.)

After quoting a portion of the passage from *Brydonjack* that we have set out above—including the part stating that "the legislature may put reasonable restrictions upon constitutional functions of the courts provided they do not defeat or materially impair the exercise of those functions" (*Brydonjack* v. *State Bar*, *supra*, 208 Cal. at p. 444)—the court in *Millholen* continued: "Admittedly, therefore, the legislature, within the foregoing limitations, could in its wisdom provide the compensation that should be paid petitioner and could delegate that duty to a bureau of the executive department thereof.

As is said in *Nicholl* v. *Koster* [(1910)] 157 Cal. 416, 423 [108 P. 302]: 'The legislature may indeed provide for the appointment of such assistants of the court by the executive department, or by [the] election of the people, and thus relieve the court of the burden of choosing such persons. But if the legislature or the Constitution should fail to provide such persons, a court invested with jurisdiction would have all the powers necessary to its convenient exercise and could appoint such assistants as might be required.'" (*Millholen* v. *Riley, supra,* 211 Cal. at p. 34.)

Noting that it already had concluded that the Legislature had not reposed the power to appoint or to fix the compensation of the law secretary in any other officer or bureau and thus that the Court of Appeal had the authority to appoint her, the court in *Millholen* added: "This, indeed, is as it should be. A law secretary is called upon to do work of a highly specialized and confidential character. Such a person must possess certain legal attainments as well as certain powers of discretion and discernment that may not be so readily recognized or appraised by another as by a member of the judiciary. Besides, such person necessarily must have advance knowledge of decisions and judgments of the court. For these and many other reasons that could be assigned, we have no doubt that it was the intention of the legislature to leave both the appointment and the compensation of law secretaries to the courts they serve. Of course, respondents have the power of audit of petitioner's claim, but this is far from being authorized to appoint her or to fix her compensation." (211 Cal. at pp. 34-35.)

In *Johnson* v. *Superior Court, supra,* 50 Cal.2d 693, the court addressed the question whether Code of Civil Procedure section 170.6, which permits a party to disqualify a judge of a trial court simply by filing an affidavit of prejudice against the judge, was unconstitutional as an unwarranted legislative interference with the power of the courts. Noting that this court previously had held that "[t]he Legislature may adopt reasonable rules and regulations regarding the disqualification of judges" (50 Cal.2d at p. 696, citing *Caminetti* v. *Pac. Mutual L. Ins. Co.* (1943) 22 Cal.2d 386 [139 P.2d 930]), the court in *Johnson* concluded that the Legislature had "acted within its power to adopt reasonable regulations when it provided that, for the limited purposes of section 170.6, prejudice may be established by the filing of an affidavit sworn to by a party or his attorney, without judicial determination of the existence of the fact." (50 Cal.2d at p. 697.) Although the court in *Johnson* recognized that it was possible "that the section may be abused by parties seeking to delay trial or to obtain a favorable judge" (*ibid.*), the court concluded that that possibility "was a matter to be balanced by the Legislature against the desirability of the objective of the statute. . . . We cannot properly assume that there will be a wholesale making of false

statements under oath, and the fact that some persons may abuse the section is not a ground for holding the provision to be unconstitutional." (*Ibid.*; see also *Solberg* v. *Superior Court, supra,* 19 Cal.3d 182 [reaffirming the holding in *Johnson,* and rejecting an "as applied" challenge to the statute].)

Finally, in *In re McKinney, supra,* 70 Cal.2d 8, this court addressed a constitutional challenge, based upon the separation of powers doctrine, to a statute that fixed the punishment for contempt of court. In upholding the constitutionality of the statute, the court in *McKinney* explained: "It is well established . . . that a court has inherent power to punish contempts of court. [Citations.] [¶] It does not, however, follow that the Legislature may not place reasonable limitations on this inherent power. . . . [¶] . . . '[I]t may be conceded that a statute without constitutional authority therefor, which takes from the court all power to punish for contempt, or fixes a penalty wholly inadequate for the purpose, would not be countenanced by the courts. Nevertheless, . . . we are not prepared to adopt respondent's theory that our constitutional courts possess inherent power to the full extent as did the courts of England, which in some cases we find imposed enormous fines and imprisonment for years. To do so would not only be inconsistent with the spirit and genius of our institutions, but likewise would be tantamount to a denial of legislative power to regulate the practice and procedure by which our courts are governed . . . .' " (*Id.* at pp. 10-11.)

■ As this brief review of the *Brydonjack, Millholen, Johnson,* and *McKinney* decisions indicates, to say that a court has "inherent power" with respect to a particular subject matter or function, as that term is used in this line of cases, appears to mean simply that the court, by virtue of its status as one of the three constitutionally designated branches of government, has the power to act even in the absence of explicit constitutional or legislative authorization. (See generally, Stumpf, Inherent Powers of the Courts (1994) pp. 3-5.) Thus, for example, the *Millholen* decision recognized that, even in the absence of specific legislative authorization, a court may employ staff to assist the court in performing judicial tasks, and may authorize the payment of such staff from appropriated funds. The same is true of the contempt power in *McKinney*: even in the absence of legislation authorizing a court to exercise the power of contempt, that power is inherent in the function of a constitutionally created court.

It does not follow, however, that the Legislature necessarily violates the separation of powers doctrine whenever it legislates with regard to such an inherent judicial power or function. As *Brydonjack* recognizes, the circumstance that admission to the bar is an inherent judicial function does not

prevent the Legislature from enacting legislation that regulates admission to the bar. Similarly, *Millholen* recognizes that the circumstance that, even in the absence of applicable legislation, a court may hire staff to assist it in its operations does not mean that the Legislature is constitutionally barred from authorizing some other entity to establish the compensation of court staff. Finally, as *McKinney* demonstrates, the circumstance that the court has inherent power to punish contempt does not mean the Legislature is powerless to enact statutes regulating contempt procedures or punishment. Of course, as the *Brydonjack* decision recognizes, the separation of powers doctrine places limits upon legislative action in this arena: "the [L]egislature may put reasonable restrictions upon constitutional functions of the courts *provided they do not defeat or materially impair the exercise of those functions.*" (*Brydonjack v. State Bar, supra,* 208 Cal. at p. 444, italics added.)

Although none of the foregoing decisions dealt with the same subject matter involved in the present case (namely, the authority to designate the days on which a court shall or shall not be in session), the county does not suggest that, in the absence of applicable legislation, a court would lack the inherent power under the California Constitution to establish the days that the court will be open to the public. ██ As we have seen, by virtue of its constitutional status and responsibilities, a court possesses "all the inherent and implied powers necessary to properly and effectively function as a separate department in the scheme of our state government" (*Brydonjack v. State Bar, supra,* 208 Cal. at p. 442), and it appears clear that one of those basic implied powers is the authority to establish a schedule providing when the court generally will be open to the public. (See, e.g., 18 Ops.Cal.Atty.Gen. 287, 288 (1951) ["The Clerk and his office being a necessary adjunct of the Court [of Appeal] . . . , and the Legislature not having specifically designated the hours the Clerk's office shall be open, they are necessarily under the control and jurisdiction of the Courts. That being true, the office hours and attendance at Court are at the will and pleasure of the Courts, subject to the minimum office hour requirement set by the Legislature . . . ."].)

As is demonstrated by the decisions reviewed above, however, the circumstance that a court has, in this sense, "inherent power" to control the hours and days of its operations does not mean that every legislative regulation in this area is prohibited by the separation of powers doctrine. As we have seen, the cases recognize that the Legislature generally may adopt reasonable regulations affecting a court's inherent powers or functions, so long as the legislation does not "defeat" or "materially impair" a court's exercise of

its constitutional power or the fulfillment of its constitutional function. (*Brydonjack* v. *State Bar*, *supra*, 208 Cal. 439, 444.)[6]

 The question posed by the present proceeding is whether section 68108, in authorizing a county to designate unpaid furlough days on which the superior court of the county "shall not be in session," is unconstitutional *on its face*. Although the Superior Court alleged in its complaint that the closing of the court on the unpaid furlough days designated by the county "will prevent the court from fulfilling its statutorily and constitutionally mandated duties," the county denied that allegation in its answer, and the trial court, in ruling upon the Superior Court's petition for a writ of mandate, did not purport to resolve that dispute but rather addressed only the Superior Court's facial constitutional challenge to the statute. Thus, although the Superior Court claims that, in light of its own particular workload and staffing, the furlough program adopted by the county for the 1993-1994 fiscal year would, in fact, "materially impair" the court's fulfillment of its constitutional function within the meaning of the *Brydonjack* case, we do not believe that *that* issue—which amounts to an "*as applied*" constitutional challenge to the statute—is properly before us in this proceeding.[7]

---

[6]The Superior Court places considerable emphasis on language from the decision in *Millholen* indicating that the Legislature may regulate the courts' operation "so long as their efficiency is not thereby impaired." (*Millholen* v. *Riley, supra*, 211 Cal. at p. 34.) This language, however, has not been, and cannot reasonably be, interpreted to mean that a legislative measure affecting a court's operations is unconstitutional whenever the enactment increases a court's burden or makes the court less "efficient," for example by adding to the court's workload without providing additional judges and staff, or by restricting the authority previously exercised by the court. Thus, in *McKinney, supra*, 70 Cal.2d 8, the court did not find that the statute limiting the sanctions that a court may impose for contempt was unconstitutional (because it restricted a court's preexisting discretion to impose the sanctions the court believed necessary to control the proceedings before it), but rather indicated that such legislation would be unconstitutional only if it "takes from the court all power to punish for contempt, or fixes a penalty wholly inadequate for the purpose . . . ." (*Id.* at p. 11.) When the decisions discussed above are read as a whole, it is readily apparent that the standard they have embraced is one that looks to whether the legislation "defeats" or "materially impairs" a court's ability to perform its constitutional functions.

[7]In its briefing in this court, the Superior Court maintains that its "as applied" challenge to section 68108 is properly before us, and it describes as "undisputed" its contention in the trial court that the furlough days designated by the Board of Supervisors would interfere with or prevent the Superior Court's fulfillment of its constitutional duties. The Superior Court, however, did not purport to rely upon this "as applied" claim in the Court of Appeal, and, in any event, contrary to the Superior Court's assertion in this court, the allegation in its complaint that the furlough days designated by the county would prevent the court from fulfilling its constitutional duties was denied in the county's answer to the complaint. The county, in maintaining that its designation of six unpaid furlough days would not, in fact, defeat or materially impair the Superior Court's ability to fulfill the court's constitutional function, has relied in part upon the circumstance that under the current provisions of Code of Civil Procedure section 134, subdivision (c) (quoted in fn. 8, *post*), the Superior Court

Similarly, because we address only a facial challenge to the statute, we have no occasion in this case to attempt to determine the precise scope of the "judicial emergency" exception recognized by section 68108—which, when invoked by the presiding judge of a court, permits the court to remain "in session" despite the county's designation of a particular day as an unpaid furlough day—or to determine which specific judicial acts may be performed by judges of the superior or municipal court on days when, pursuant to section 68108, the court is "not in session." Under general California law, there are numerous matters upon which superior and municipal court judges traditionally may act in chambers or out of court (see, e.g., Code Civ. Proc., § 166; 2 Witkin, Cal. Procedure (3d ed. 1985) Courts, §§ 51-55, pp. 66-71), and section 68108 itself makes it clear that this statute is not intended to prohibit judicial officers from conducting arraignments or examinations as required pursuant to Penal Code section 825, or from signing "any necessary documents *on an emergency basis.*" (Italics added.) Because we do not have before us a complaint as to the effect of section 68108 in a particular case, we have no occasion to determine whether the statute would be unconstitutional insofar as it precludes a court from performing a specified act at a given time.

Confining our consideration to the question of the *facial* constitutionality of section 68108, we believe it is clear that the decisions in *Brydonjack,* *Millholen, Johnson,* and *McKinney* do not support the Court of Appeal's determination that the statute is unconstitutional on its face. In our view, it cannot reasonably be suggested that, *under any and all circumstances,* a county's designation of one or more unpaid furlough days pursuant to section 68108 *necessarily* will "defeat" or "materially impair" a court's fulfillment of its constitutional duties. (At oral argument, the Superior Court urged that we find that even a single day of court closure per year would have this effect.) It is possible, for example, that the caseload of a superior or

retained authority to hold court sessions on any or all of the numerous legal holidays and nonjudicial days set forth in Code of Civil Procedure section 135 and Government Code section 6700. (The record does not indicate whether the Superior Court availed itself of such authority during the period in question.)

The Superior Court's "as applied" challenge to the county's furlough program may be litigated and resolved in the cross-actions for declaratory relief that remain pending in the trial court. (Cf. *Mallett* v. *Superior Court* (1992) 6 Cal.App.4th 1853, 1864-1879 [8 Cal.Rptr.2d 829] [holding that, under § 68073, a municipal court's findings as to the "inadequacy" of services provided to it by the county and the "necessity" of additional expenditures are not conclusive but instead are subject to review in a judicial proceeding].)

One of the amici curiae in this matter requests that we take judicial notice of certain documents relating to court filings in Mendocino County and to the current status of funding in the trial courts throughout the state. Because the only issue before us is the facial constitutionality of section 68108, this material is not relevant and accordingly we deny the request for judicial notice. (See, e.g., *Mangini* v. *R.J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063 [31 Cal.Rptr.2d 358, 875 P.2d 73].)

municipal court at a particular time might permit closing the court on one or more furlough days without a serious debilitating effect upon the court's ability to fulfill its constitutional functions. Under the cases reviewed above, the circumstance that the provisions of section 68108 *might* be implemented in a manner that would defeat or materially impair a court's ability to perform its functions is not a proper basis for holding the statute unconstitutional on its face.

The Superior Court maintains, however, that even if a county's designation of unpaid furlough days under section 68108 will not *necessarily* or *inevitably* defeat or materially impair a court's ability to perform its constitutional functions, the statute nonetheless should be found unconstitutional *on its face* on the ground that the power to designate the days upon which a court will or will not be open is a function reserved by the California Constitution *exclusively* to the judicial branch. We have recognized that there are *some* functions performed by the judicial branch that the separation of power doctrine prohibits the Legislature from exercising under any circumstances. Thus, for example, the Legislature may not readjudicate a specific controversy that has been heard by a court and resolved by final judgment. (*Mandel* v. *Myers, supra*, 29 Cal.3d 531, 547-550.) The Superior Court argues that the designation of days on which a court shall not be in session likewise should be considered a function that the Constitution reserves exclusively to the courts.

As a historical matter, the Superior Court's argument clearly is untenable. ▮ It generally has been recognized, in jurisdictions throughout the nation, that a legislative body is authorized to declare and designate legal holidays, and either provide that the courts shall be closed entirely on such designated days or specify the particular types of judicial acts that may be performed on such days. (See, e.g., *Stone* v. *United States* (1897) 167 U.S. 178, 194-196 [42 L.Ed. 127, 133-134, 17 S.Ct. 778]; see generally, 73 Am.Jur.2d, Sundays & Holidays, §§ 103-106, pp. 860-863.) As one annotation observes: "It has been held that under statutes prohibiting courts from conducting business on a holiday, except for limited purposes, a judgment or order, not within such limited purposes, issued on a holiday . . . is invalid." (Annot. (1962) 85 A.L.R.2d 595, 602, fn. omitted.) We have found no case suggesting that the authority to designate legal holidays or nonjudicial days on which courts shall not be in session is exclusively a judicial function, or that a legislative body violates the separation of powers doctrine when it establishes such a legal holiday or nonjudicial day.

The history of holiday authorization legislation in California is consistent with the general rule in other jurisdictions, at least with regard to the

operations of the trial courts. From the earliest days of statehood, the Legislature has exercised the authority to designate legal holidays and nonjudicial days, and to specify which trial court actions, if any, may be conducted on such days. (See, e.g., Stats. 1863, ch. 260, §§ 70, 71, p. 343; Code Civ. Proc., former §§ 133-135 [enacted 1872].) The current general statutory provisions pertaining to judicial holidays, which address the subject comprehensively and in considerable detail, reflect the Legislature's traditionally understood authority to act in this realm. (See Code Civ. Proc., §§ 133-136.)[8] Past California decisions uniformly have recognized the general validity of such legislation and have held that trial court orders, issued on a legislatively designated judicial holiday but not authorized by the applicable statute, are void or voidable. (See, e.g., *People* v. *Soto* (1884) 65 Cal. 621, 621-622 [4 P. 664]; *Matter of Smith* (1907) 152 Cal. 566, 568-572 [93 P. 191]; *Jackson* v. *Dolan* (1922) 58 Cal.App. 372, 374-375 [208 P.

---

[8]Code of Civil Procedure section 133 provides: "Courts of justice may be held and judicial business transacted on any day, except as provided in this article."

Code of Civil Procedure section 134 provides:

"(a) Except as provided in subdivision (c), the courts shall be closed for the transaction of judicial business on judicial holidays for all but the following purposes:

"(1) To give, upon their request, instructions to a jury when deliberating on their verdict.

"(2) To receive a verdict or discharge a jury.

"(3) For the conduct of arraignments and the exercise of the powers of a magistrate in a criminal action, or in a proceeding of a criminal nature.

"(4) For the conduct of Saturday small claims court sessions pursuant to the Small Claims Act set forth in Chapter 5.5 (commencing with Section 116.110.)

"(b) Injunctions and writs of prohibition may be issued and served on any day.

"(c) In any superior, municipal, or justice court, one or more departments of the court may remain open and in session for the transaction of any business which may come before the department in the exercise of the civil or criminal jurisdiction of the court, or both, on a judicial holiday or at any hours of the day or night, or both, as the judges of the court prescribe.

"(d) The fact that a court is open on a judicial holiday shall not make that day a nonholiday for purposes of computing the time required for the conduct of any proceeding nor for the performance of any act. Any paper lodged with the court at a time when the court is open pursuant to subdivision (c), shall be filed by the court on the next day which is not a judicial holiday, if the document meets appropriate criteria for filing."

Code of Civil Procedure section 135 provides: "Every full day designated as a holiday by Section 6700 of the Government Code, including that Thursday of November declared by the President to be Thanksgiving Day, is a judicial holiday, except September 9, known as 'Admission Day,' March 31, known as 'Cesar Chavez Day,' and any other day appointed by the President, but not by the Governor, for a public fast, thanksgiving or holiday. If a judicial holiday falls on a Saturday or a Sunday, the Judicial Council may designate an alternative day for observance of the holiday. Every Saturday and the day after Thanksgiving Day is a judicial holiday. Officers and employees of the courts shall observe only the judicial holidays established pursuant to this section."

Code of Civil Procedure section 136 provides: "If a day appointed for the holding or sitting of a court, or to which it is adjourned, falls on a judicial holiday, it shall be deemed appointed for or adjourned to the next day."

315].) Furthermore, past cases also disclose that it is by no means unprecedented for legal holidays or nonjudicial days to be declared as a result of fiscal considerations. In *Diepenbrock* v. *Superior Court* (1908) 153 Cal. 597, 599 [95 P. 1121], for example, this court noted that "in the autumn of 1907, owing to the financial crisis through which the state was passing, it had been deemed necessary by the governor to declare a series of holidays."

A review of the history of the provisions of the California Constitution relating to trial courts confirms the Legislature's general authority to act in this area. The original state Constitution, adopted in 1849, contained no explicit provision referring to trial court holidays or nonjudicial days. When the California Constitution was comprehensively revised in 1879, two clauses were included within article VI, section 5 (the general section dealing with the jurisdiction of the superior courts), declaring that the superior courts "shall be always open (*legal holidays and non-judicial days excepted*)" (italics added), and that "[i]njunctions and writs of prohibition may be issued and served on legal holidays and non-judicial days." In 1928, the "shall be always open" clause of former article VI, section 5, was amended to read: "Superior courts, municipal courts, and justices' courts in cities having a population of more than forty thousand inhabitants shall always be open, *legal holidays and nonjudicial days excepted.*" (Italics added.) (The clause relating to the issuance of injunctions and writs of prohibition on legal holidays remained unchanged.)

Finally, in 1966, as part of a general revision of article VI, these two clauses of former article VI, section 5, were removed from the Constitution. The report of the California Constitutional Revision Commission that proposed the 1966 changes specifically listed these two clauses of former article VI, section 5, among a number of provisions of former article VI "that were deleted but will be called to the attention of the Legislature for consideration as statutes." (Cal. Const. Revision Com., Proposed Revision of arts. III, IV, V, VI, VII, VIII, XXIV of the Cal. Const. (Feb. 1966) pp. 102, 103.) In describing why such provisions were not included within the revised Constitution, the report explains: "The conversion to statutory form may be advisable for one or more reasons. First, the provision may be so detailed as to have no place in a constitution, which is supposed to set forth the 'organic law.' Second, the provisions may be of a nature requiring flexibility that only the statutory form can provide." (*Id.* at p. 102.)[9]

---

[9]The history of the California constitutional provisions dealing with appellate courts is somewhat different.

Article VI, section 10, of the 1849 Constitution provided simply that "[t]he times and places of holding the terms of the Supreme Court, and the general and special terms of the

As the foregoing summary indicates, nothing in the current provisions of the California Constitution indicates that the Legislature lacks authority to enact statutory provisions designating holidays or other nonjudicial days on which trial courts shall not be in session. The provisions that formerly were contained in the Constitution relating to this subject were deleted in 1966, precisely because the drafters of the 1966 revision were of the view that the subject was more appropriate for statutory enactment than for inclusion in the Constitution. Moreover, even at the time the California Constitution contained a provision declaring that trial courts "shall always be open," that clause was qualified at all times by an explicit exception for "legal holidays and nonjudicial days"—days that always have been established pursuant to statute.[10]

---

District Courts within the several districts, shall be provided by law." When a new Constitution was adopted in 1879, article VI, section 2, provided in relevant part that "[t]he Supreme Court shall consist of a Chief Justice and six Associate Justices. The court may sit in departments and in bank, and shall always be open for the transaction of business. . . . The Chief Justice may convene the court in bank at any time . . . ." Relying upon the difference in wording between the "shall always be open" clause of article VI, section 2, and the comparable clause of article VI, section 5 (which, as noted above, provided that superior courts "shall be always open (legal holidays and non-judicial days excepted)"), this court held in *Adams* v. *Dohrmann* (1883) 63 Cal. 417, 421, that "the framers of the Constitution did not intend that the law relating to holidays should apply to the Supreme Court."

When article VI was reorganized and revised in 1966, the language specifying that the Supreme Court "shall always be open" was deleted, and the relevant portion of section 2 was revised to provide: "The Supreme Court consists of the Chief Justice of California and 6 associate justices. The Chief Justice may convene the court at any time. . . ." This language of article VI, section 2, remains unchanged today.

The Courts of Appeal were created by the adoption of article VI, former section 4, in 1904, which provided for the establishment of at least three appellate districts. As initially enacted, the constitutional provision required in relevant part that "[s]aid District Courts of Appeal shall hold their regular sessions respectively at San Francisco, Los Angeles and Sacramento, and they shall always be open for the transaction of business." In 1928, the provision relating to the Courts of Appeal was moved to article VI, section 4a, but the "shall always be open" clause remained unchanged.

In the revision of article VI in 1966, the provision relating to the Courts of Appeal was moved to article VI, section 3, and the clause of former article VI, section 4a, providing that such courts "shall always be open," was deleted. The report of the California Constitutional Revision Commission proposing the revision lists this clause of former article VI, section 4a, as one of the provisions that "will be called to the attention of the Legislature for consideration as statutes." (Cal. Const. Revision Com., Proposed Revision of arts. III, IV, V, VI, VII, VIII, XXIV of the Cal. Const., *supra*, pp. 102, 103.)

Section 41 of the Code of Civil Procedure currently provides that "[t]he Supreme Court and the courts of appeal may transact business at any time."

[10]Past cases shed additional light on the background and significance of the "shall always be open clause" of former California Constitution article VI, section 5. Prior to the adoption of the Constitution of 1879, there were fixed terms of court, and the general rule was that any judicial act conducted by a court after its term had ended was void. (See, e.g., *Bates* v. *Gage* (1870) 40 Cal. 183, 184-185.) The Constitution of 1879 abolished terms of court, and, as a result, "whenever a judge of the superior court is present at the place designated for the

In our view, this history undermines completely the Superior Court's contention that, under the California Constitution, the authority to designate days on which trial courts shall not be in session is reserved exclusively to the judicial branch. On the contrary, the Legislature long has exercised such authority, as have the legislatures in other jurisdictions.[11]

Furthermore, unlike those instances in which it has been held that the separation of powers doctrine bars the Legislature from exercising an exclusive judicial function (such as readjudicating or setting aside a final judicial judgment), the Legislature's power to designate legal holidays or other nonjudicial days on which courts generally will be closed does not inevitably threaten the integrity or independence of the judicial process. The circumstance that a court will be closed on a particular day is unlikely to affect the resolution of a particular controversy or prevent a court from proceeding in accordance with its own view of the governing legal principles. And unlike other conceivable legislative interventions in the judicial process—for example, a legislative attempt to compel an appellate judge to employ a research attorney chosen by the legislative or executive branch (cf. *Millholen* v. *Riley*, *supra*, 211 Cal. 29, 34-35)—the Legislature's authority to designate days on which courts shall be closed does not intrude upon the judge's decisionmaking process or the independence of the judicial role. Under these

transaction of judicial business, and there assumes to transact such business, his acts may be considered as the acts of the court of which he is a judge." (See *Von Schmidt* v. *Widber* (1893) 99 Cal. 511, 514 [34 P. 109].)

This constitutional provision did not, however, alter the Legislature's authority with respect to legal holidays. As this court explained in *People* v. *Soto*, *supra*, 65 Cal. 621, 622: "The phrase 'they'—the Superior Courts—'shall always be open (legal holidays and non-judicial days excepted),' is prohibitory of legislation establishing *terms of court* during which only judicial business can be transacted, *but leaves the legislature at liberty to allow or disallow the transaction of all or any class of judicial business upon legal holidays.*" (First italics in original, second italics added.)

[11]In support of its contention that, under the California Constitution, courts have the exclusive authority to control the dates on which a court shall not be in session, the Superior Court relies upon the current provisions of Code of Civil Procedure section 134, subdivision (c)—enacted in 1992 (Stats. 1992, ch. 460, § 2)—which permit a superior or municipal court to remain open on a judicial holiday "as the judges of the court prescribe." (The full text of section 134, subdivision (c), is set out in footnote 8, *ante*.) The Superior Court suggests that this provision reflects a legislative recognition of the courts' ultimate constitutional authority in such matters.

In view of the history set forth above, we do not believe that the current provisions of Code of Civil Procedure section 134, subdivision (c), can reasonably be so interpreted. As we have seen, the Legislature traditionally has designated legal holidays and nonjudicial days, and has determined which judicial acts may be performed on such days. The circumstance that the Legislature amended section 134 in 1992 to authorize trial courts to conduct any judicial activities on a judicial holiday "as the judges of the court prescribe," simply reflects, we believe, a legislative policy decision to afford such an option to the trial courts, rather than an acknowledgment that—absent such a provision—the courts would have such authority in any event.

circumstances, and in light of the history reviewed above, we cannot agree with the Superior Court's contention that the separation of powers doctrine prohibits any legislative action that specifies days on which courts shall not be in session.

Finally, the Superior Court attempts to bolster its argument by asserting that the legislation in question is invalid under the separation of powers doctrine because it limits the public's "access to justice," a subject that the Superior Court suggests lies exclusively within the province of the judicial branch. The judiciary, of course, has a keen and overriding interest in assuring that the public enjoys the broadest possible access to justice through the judicial system. The objective of preserving and promoting the public's access to justice and the judicial system, however, is by no means solely the concern or province of the judicial branch. The legislative and executive branches are necessarily and centrally involved in the formulation of a great variety of measures that vitally affect the public's "access to justice" through the judicial system, from determining the number and location of new judgeships and courthouses to establishing which court-related expenses should be financed at the state level and which at the local level. There simply is no constitutional basis for the Superior Court's claim that because the statute in question affects the public's access to justice, it improperly impinges upon an exclusive preserve of the judicial branch.[12]

For the foregoing reasons, we conclude that the Court of Appeal erred in holding that section 68108 is unconstitutional on its face. The judgment of the Court of Appeal is reversed.

Mosk, J., Kennard, J., Baxter, J., Werdegar, J., and Chin, J., concurred.

**LUCAS, C. J.**—I concur. As the majority explains, the Mendocino County Superior Court's constitutional challenge to Government Code section 68108 is a *facial* one. We are not deciding the more difficult question whether the statute, as applied in this case, materially impairs judicial functions of the superior court.

I am somewhat troubled by the majority's failure to address the question whether the Legislature had the power to *delegate* to the various counties

---

[12]In its briefing in this court, the Superior Court, for the first time, contends that even if *the Legislature* may exercise authority to designate holidays or nonjudicial days on which the courts shall not be in session, section 68108 nonetheless should be held unconstitutional on its face on the ground that the statute improperly delegates such authority to the *counties*, which are left free to determine whether to establish any unpaid furlough days—and to specify the number of days, and the specific dates, that the courts of the county will not be in session. Because the Superior Court did not challenge the statute on this basis in the trial court, and did not raise this contention in the Court of Appeal, it is not properly before us.

authority to declare unpaid judicial furlough days. The majority states that because the contention was not raised in the Court of Appeal, it is not properly before us. (Maj. opn., *ante*, at p. 66, fn. 12.) But the issue appears on the face of the statute, was at least mentioned by the Court of Appeal in its opinion, and certainly we could have requested further briefing on it.

As the Court of Appeal observes in describing the statutory scheme before us, "Thus, however, anomalous it may seem, the Legislature has now established a system under which the judges of a court may choose to conduct night court on New Year's Eve, but are absolutely precluded from conducting court on *days designated by county boards of supervisors* as 'unpaid furlough days.'" (Italics added.)

Thus, on the face of the statutory scheme, County "A" could select no unpaid furlough days while County "B" presumably could select 200 of them. Given the potential for disruption, unfairness, and confusion that could arise if each individual county were at liberty to choose the date and number of unpaid furlough days for that particular county, the Legislature's delegation to the counties may well be subject to serious challenge.