[No. A074746. First Dist., Div. Two. Nov. 12, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
WAYNE SMITH, Defendant and Appellant.

## COUNSEL

Alisa J. Kim, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Stan M. Helfman and Violet M. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

LAMBDEN, J.—We hold in this case charged under the "Three Strikes" law (Pen. Code, § 1170.12; unspecified section references are to that code) that the defendant is entitled to a remand under *People* v. *Superior Court* (*Romero*) (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628] (*Romero*), where the record of his pre-*Romero* motion to strike shows the court felt it had no discretion and where the motion appears to have been consistent with his previously negotiated plea.

A second amended complaint charged Wayne Smith with three counts of selling (Health & Saf. Code, § 11352, subd. (a)) and one count of possessing (*id.*, § 11350, subd. (a)) cocaine base, each count carrying allegations of presumptive probation ineligibility (§ 1203.073, subd. (b)(6)), a prior strike (§ 1170.12, subds. (a)-(c)) consisting of a 1994 attempted robbery with weapon use (§§ 664/211, 12022, subd. (b)), and a prison term served for the prior (§ 667.5, subd. (b)).

In a plea bargain, Smith pled guilty to counts 1 and 4 (one sale and the possession) and admitted the strike and probation-ineligibility allegations, in return for dismissal of the other counts with a *Harvey* waiver (*People* v. *Harvey* (1979) 25 Cal.3d 754 [159 Cal.Rptr. 696, 602 P.2d 396]) and striking of the prison-term prior. At sentencing, two months before discretion to strike was clarified in *Romero*, the court denied Smith's motion to strike his strike prior and imposed doubled midterms of eight years (count 1) plus sixteen months (count 4).

## DISCUSSION

Smith requests a remand for the court to consider exercising its discretion to strike his strike, since the record shows the court did not understand its power to do so. The Attorney General counters that a remand is barred by the plea and, in any event, would be futile given the court's comments on the record.

The court below heard counsel debate whether the court, first, had discretion to strike, and second, should exercise it in Smith's favor. It then ruled in pertinent part: "I agree with you, Mr. Hurt [defense counsel], that your client is where he is, certainly, to a large extent, because he had a bad family environment and that he does not have a mental capacity that most other people have[,] to deal with situations that he's had to deal with.

"But that does not mean, because, perhaps, I would like to think that Mr. Smith might benefit from a residential treatment program, that I make my own law.

"I think, to a certain extent, I don't have to sit here and act like a robot, but there are some limits to how imaginative a trial judge should be.

"I'm obligated to enforce the law. The People in this state, for better or for worse, have enacted the legislation under three strikes to deal with recidivism which, to a substantial point, limits the Court in specific situations.

"And I believe that, at this juncture, for the Court to exercise a 1385 discretion to strike the prior would constitute or be legally impermissible. That's the way I see the law.

"I think the law is clear that the people are looking for punishment of recidivists. I think the cases [which] have decided that the Court does not have this power are correct, pending further decision by the Supreme Court.

"I also have some substantial question in my mind that even if I did have the discretion here, whether it would be appropriate. In looking at the factors

in aggravation and mitigation, with respect to the offense here, Mr. Smith does not have a good record. I think he may be turning himself around.

"If I recall correctly, I believe the first time I saw him he was in a red suit here. It does appear that he is beginning to make efforts, perhaps, to deal with the substance abuse problem.

"But people in Mr. Smith's position, in an effort to avoid going to state prison, come to do a lot of things before sentencing to try to get off on probation.

"So, as I say, I think that's a moot question here. I just want to make it clear, though, that I think you raise a lot of good points and I think we have to give a lot of thought in society about how we deal with somebody like Mr. Smith. It doesn't serve anybody's interests to create criminal outcasts in society if there is any realistic way of bringing somebody like Mr. Smith back into society."

The court then went on to state reasons why it was imposing a middle term, rather than the upper term recommended in the presentence report.

### The record supports a remand under Romero/Fuhrman

After the completion of briefing on this appeal, this appellate division construed *Romero* as requiring a remand unless the sentencing court (1) was aware it had discretion to strike without the concurrence of the district attorney, yet did not, or (2) clearly indicated it would not, in any event, have done so. "[I]n all other situations," we held, defendants sentenced before the *Romero* decision were "entitled to be resentenced by a trial court informed of sentencing discretion expressed in *Romero*. . . ." (*People* v. *Allen* (1997) 53 Cal.App.4th 1127, 1135-1136 [62 Cal.Rptr.2d 274] (*Allen*), review den. June 11, 1997.)

More recently, a four-member majority on the Supreme Court took a different approach, agreeing with *Allen* and other cases to this extent: "In view of the weight of published decisions prior to *Romero* (holding that a trial court lacked discretion under section 1385 to strike a prior felony conviction), we do not believe it would be appropriate to rely upon the rule that a trial court ordinarily is presumed to have correctly applied the law [citations], or to find that a defendant who failed to anticipate our subsequent decision in *Romero* 'waived' or 'forfeited' his or her right to raise the issue. [Citations.]" (*People* v. *Fuhrman* (1997) 16 Cal.4th 930, 945 [67 Cal.Rptr.2d 1, 941 P.2d 1189] (*Fuhrman*).) The majority held, however, "[T]he appropriate course, in a 'silent record' case, is for an appellate court to deny the

request for remand, without prejudice to the defendant's seeking relief in a petition for writ of habeas corpus. . . ." (*Ibid.*) It disapproved *Allen* and other cases to that extent. (*Id.* at p. 947, fn. 11.)

■ Ours is not a "silent record" case. This trial court was asked to exercise its discretion and made it clear it believed it had none. It said "1385 discretion to strike" would be "legally impermissible" and felt "the cases [which had] decided that the Court does not have this power [were] correct, pending further decision by the Supreme Court." *Fuhrman* confirms "that where the record *affirmatively* discloses that the trial court *misunderstood* the scope of its discretion, remand to the trial court is required to permit that court to impose sentence with full awareness of its discretion as clarified in *Romero*. (*Romero, supra,* 13 Cal.4th 49, 530, fn. 13.)" (*Fuhrman, supra,* 16 Cal.4th 930, 944.)

This brings us to whether the court expressed an unwillingness to strike in any event, for as *Fuhrman* also confirms, "remand is not required where the trial court's comments indicate that even if it had authority to strike a prior felony conviction allegation, it would decline to do so." (*Fuhrman, supra,* 16 Cal.4th 930, 944, citing *Romero, supra,* 13 Cal.4th 497, 530, fn. 13.) The record is mixed. On one hand, the court said it had "some substantial question" whether striking was "appropriate"; on the other hand, it called striking "a moot question"—perhaps alluding to perceived lack of discretion—but spoke sympathetically of Smith's situation and the need to avoid creating "criminal outcasts" of people like him. The court then relied on the 20-year-old Smith's mental deficiencies (in evidence through a psychological evaluation) and substance abuse problem, using them as partial reasons for rejecting an upper term.

In our view, the court's allusion to "some substantial question," at least in the context of its generally favorable view of Smith's personal situation, fails to show the court " 'clearly indicated' " an unwillingness to strike (*Allen, supra,* 53 Cal.App.4th 1127, 1136, quoting *Romero, supra,* 13 Cal.4th 497, 530, fn. 13).

We assume the importance of having a trial court informed of its discretion at sentencing, whether the conviction is obtained by plea agreement or by court or jury trial. Also, for *Romero* to be " 'fully retroactive' " as confirmed in *Fuhrman* (*Fuhrman, supra,* 16 Cal.4th 930, 947, quoting *Romero, supra,* 13 Cal.4th 497, 530, fn. 13), we need to know what the court would have done had it not labored under a misapprehension of its authority under section 1385, subdivision (a). Therefore, where the record in a plea-based conviction and sentence is not "silent" but shows the court did

misunderstand its discretion, and does not show how the court would have acted had it been properly informed, a remand is appropriate. Our record fits this description.

### A remand is consistent with the plea agreement

The only bar to a *Romero* remand, then, is if it would be in violation of the plea agreement, which we may not set aside without consent of the People. (§ 1192.5; *People* v. *Cardoza* (1984) 161 Cal.App.3d 40, 45, fn. 4 [207 Cal.Rptr. 388]; *People* v. *Ames* (1989) 213 Cal.App.3d 1214, 1217 [261 Cal.Rptr. 911].) This is an issue unexplored in our *Allen* opinion, which involved sentencing not after a negotiated plea, but after a jury trial (*Allen, supra*, 53 Cal.App.4th 1127, 1130).

The Attorney General relies on a trio of negotiated-plea cases in which a remand was denied. In one, an expressly agreed sentence of 32 months was held to bar a remand, as a breach of the bargain. (*People* v. *Cunningham* (1996) 49 Cal.App.4th 1044, 1047-1048 [57 Cal.Rptr.2d 179].) In another, the defendant was held "estopped" to seek a remand where he had received an eight-year term consistent with the doubled term promised him in the plea presentation and the court had already stricken two prior strikes on its own. (*People* v. *Cepeda* (1996) 49 Cal.App.4th 1235, 1237-1240 [57 Cal.Rptr.2d 246] [remanded only to obtain a statement of reasons for the striking ordered].) In the third, a defendant was held "estopped" since he had received a 32-month term specified in the agreement. (*People* v. *Couch* (1996) 48 Cal.App.4th 1053, 1056-1058 [56 Cal.Rptr.2d 220].) The Attorney General acknowledges these were "specified sentence" cases while in ours the plea contemplated a range of sentencing. However, we are asked to reach the same result because Smith "nonetheless received considerable benefit from the bargain," including dismissal of two counts and the striking of the alleged prison-term (nonstrike) prior.

We find this focus on the benefit of the bargain unhelpful. Presumably, every plea bargain entails some benefit, and this only begs the real questions: What *was* the bargain, and did it preclude a striking under *Romero*? Those questions, in our view, undergird the rulings in the cited cases. The indicated sentences were exactly what the defendants got, and a remand for a *Romero* exercise of discretion would have violated the bargain.

The terms of the bargain here, as affecting a motion to strike, are not expressed. Relying on negative inference, the Attorney General points to the plea-change transcript where Smith was advised his admission of the special allegations meant "the Court may not grant probation or suspend imposition

or execution of sentence." However, those words tracked the language of both the Three Strikes law (§ 1170.12, subd. (a)(2)) and the probation-ineligibility statute (§ 1203.073, subd. (b)), the latter of which contains an "unusual case" exception (*id.*, subd. (a)), thus creating ambiguity. Also, looking to the transcript of the plea-change proceeding, Smith was advised he "would be *subject to*" and "*could*" be sentenced to doubled terms (italics ours), which is also unclear. The plea-change form he signed and initialed similarly speaks of a doubled base term of six, eight or ten years (count 1) plus a doubled consecutive term of eight months (count 4) being "the *possible* sentence and sanctions which *could* be imposed" (italics added). In an "Exhibit A" supplement to the form, Smith initialed, as to his admission of the prior, the statement, "I understand that the term to which I will be sentenced is *double term* . . . ," but this remains ambiguous in light of the record as a whole.

It would have been a simple matter for the parties to specify their understanding regarding a possible exercise of discretion to strike, especially since *Romero* was pending and played prominently in discussions not only at sentencing, but also at an early and successful *Marsden* motion (*People* v. *Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44]) brought by Smith over dissatisfaction with plea negotiations. Against this ambiguity of a silent record, however, stands the parties' conduct, which speaks more clearly. Smith made and argued his motion to strike without any word from the prosecutor about this being contrary to the plea. The only argument was *on the merits* of the motion—whether the court could or should exercise discretion.

We infer from this an implicit understanding that the motion could be made without violating the bargain. It follows that a remand post-*Romero* is likewise consistent with the agreement. In finding a remand appropriate, we of course express no view on whether a motion to strike should be granted.

### DISPOSITION

The cause is remanded for the court to decide whether to exercise its discretionary authority to strike the prior (*Romero, supra,* 13 Cal.4th 497, 530-531); the judgment is affirmed in all other respects (*Allen, supra,* 53 Cal.App.4th 1127, 1138).

Kline, P. J., concurred.

**HAERLE, J.,** Dissenting.—My distinguished colleagues effectively concede that their ruling runs counter to three rulings of our sister courts in, in

chronological order, *People* v. *Couch* (1996) 48 Cal.App.4th 1053, 1056-1058 [56 Cal.Rptr.2d 220], *People* v. *Cunningham* (1996) 49 Cal.App.4th 1044, 1047-1048 [57 Cal.Rptr.2d 179], review denied, and *People* v. *Cepeda* (1996) 49 Cal.App.4th 1235, 1237-1240 [57 Cal.Rptr.2d 246]. The only difference between those cases and this is that here the plea contemplated a range of possible sentences and in those three cases there was an agreed-upon term. The Attorney General argues that the result in the three cited cases governs here, as the appellant "received considerable benefit from the bargain." Indeed he did: Two counts were stricken as was a prison-term prior. (Pen. Code, § 667.5.)

My colleagues, however, find the Attorney General's "focus on the benefit of the bargain unhelpful," and go on to say that there is always a bargain in a plea agreement and the real questions are "[w]hat *was* the bargain" and did it preclude a striking of a prior under *People* v. *Superior Court* (*Romero*) (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628] (*Romero*). (Maj. opn., *ante*, at p. 51.)

I part company with the majority right here: We are not mind readers, and I simply despair of a court such as ours successfully fathoming "what was the bargain" in any meaningful way in this or any other case. Indeed, trying to do so is necessarily an exercise in futility because, among other things, the parties will almost surely have different views regarding what their bargain encompassed and what it didn't. For example, here the majority wants to know if the bargain "preclud[ed] a striking under *Romero*?" (Maj. opn., *ante*, at p. 51.) I submit the answer to this is, absent an explicit record on the point, pretty obvious: A defendant who did not anticipate *Romero* will always say, "no, of course it didn't" whereas the prosecutor and Attorney General will always say, "yes, of course it did" and we are no closer to any sort of logical resolution.

The peril of trying to infer the nuances of the parties' "bargain" is illustrated here. The majority concedes that the "terms of the bargain here, as affecting a motion to strike, are not expressed." It then proceeds to analyze various details of the record and conclude that it is "ambiguous." (Maj. opn., *ante*, at pp. 51-52.) But it then finds the elusive answer to its "what was the bargain" question in, and only in, the fact that appellant argued a motion to strike without any objection by the prosecution that such a motion was contrary to the plea agreement! I respectfully suggest that this analysis underscores the futility of an appellate court trying to divine the "intent" underlying a trial court plea bargain: patently the prosecution's silence could just as easily be attributable to a veritable host of other considerations, e.g., it thought defense counsel was making a mess of things, the trial court's attitude toward the defendant was visible, it was late in the day, etc., etc.

Unlike the majority, I find the resolution of this issue in the ancient epigram about the problems inherent in eating one's cake and having it, too. Everyone and his brother (at least in the California criminal law arena) knew of the uncertainty surrounding the *Romero* issue in the several years between passage of the "Three Strikes" law and the issuance of that Supreme Court opinion in mid-1996. And, two months before that decision came down, these parties most certainly did, as the majority explicitly acknowledges. (Maj. opn., *ante*, at p. 52.) Plea bargains are, by definition, arrangements entered into by opposing parties to achieve certainty in an otherwise uncertain environment. That "uncertain environment" includes, I submit, all extant uncertainties, in this case *Romero*-based uncertainties. I submit that simple justice dictates that those who, during the pre-*Romero* period of uncertainty, entered into a plea agreement, whether for a specified term or a range of possible terms, are "stuck" with that deal and cannot now be heard to demand a remand. Hence, I respectfully dissent.

Respondent's petition for review by the Supreme Court was denied February 25, 1998. Baxter, J., was of the opinion that the petition should be granted.