[No. C049827. Third Dist. Dec. 12, 2006.]

OROVILLE HOSPITAL, Plaintiff and Appellant, v.
DEPARTMENT OF HEALTH SERVICES, Defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts III and IV.

COUNSEL

Hooper, Lundy & Bookman, Inc., Craig J. Cannizzo, Felicia Y Sze; and Douglas S. Cumming for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Thomas R. Yanger, Assistant Attorney General, Paul Reynaga and Barbara Haukedalen, Deputy Attorneys General, for Defendant and Respondent.

OPINION

SCOTLAND, P. J.—Under California's Medi-Cal program, a health care provider who furnishes medical assistance to the poor may seek reimbursement from the government for certain expenses, including the cost of employee health care benefits. If the provider is self-insured for such employee benefits, they are allowable costs only if the self-insurance program meets specific requirements.

Oroville Hospital (Oroville) appeals from the trial court's order denying its petition for writ of mandate, seeking to compel the California Department of Health Services (DHS) to reimburse Oroville for money it expended for employee health care.

In the published portions of this opinion, we reject Oroville's contention that the trial court and DHS improperly construed and applied pertinent guidelines found in the Provider Reimbursement Manual. As we will explain, the money that Oroville spent for its employee health care was not an allowable cost because Oroville's self-insurance program did not comply with requirements of the regulatory scheme, in that Oroville did not maintain the fund with an independent fiduciary. Consequently, Oroville was entitled only to partial reimbursement for such costs as "deductibles" under the scheme.

In the unpublished parts of this opinion, we reject Oroville's other claims of error. Accordingly, we shall affirm the judgment.

## FACTS

 Medicaid is a program through which the federal government provides financial assistance to qualified participating states for furnishing medical assistance to the poor. (42 U.S.C. § 1396 et seq.; *Children's Hospital & Medical Center v. Bonta´* (2002) 97 Cal.App.4th 740, 747 [118 Cal.Rptr.2d 629].) California participates in Medicaid through the Medi-Cal program. (Welf. & Inst. Code, § 14000 et seq.; *Children's Hospital & Medical Center v.*

*Bonta´, supra*, 97 Cal.App.4th at p. 747.) DHS administers the Medi-Cal program pursuant to the Medi-Cal Act and DHS's regulations. (Welf. & Inst. Code, § 14000 et seq.; Cal. Code Regs., tit. 22, § 50000 et seq.)

Oroville provides services to Medi-Cal beneficiaries and is reimbursed for its allowable costs, including indirect costs such as certain employee health benefit payments. (42 C.F.R. § 413.9(c)(3) (2006).) Allowable costs are determined in accordance with Medicare standards and principles of reimbursement as set forth in the Code of Federal Regulations and in HIM-15. (Cal. Code Regs., tit. 22, § 51536, subd. (b)(4).) HIM-15, which is issued by the United States Department of Health and Human Services, became HCFA Pub. 15-1. It is now Centers for Medicare & Medicaid Services Publication 15-1 and is known as the Provider Reimbursement Manual (PRM). (*Shalala v. Guernsey Memorial Hospital* (1995) 514 U.S. 87, 90 [131 L.Ed.2d 106, 113, 115 S.Ct. 1232]; *Mercy Home Health v. Leavitt* (3d Cir. 2006) 436 F.3d 370, 373.)

The PRM provides that commercial health care insurance is an allowable cost, as are contributions to a self-insurance fund if the self-insurance program meets specific requirements. (PRM §§ 2162, subd. A, 2162.4, 2162.7; further section references are to the PRM unless otherwise specified.) The PRM also allows reimbursement for a combination of purchased insurance and self-insurance. (§ 2162, subd. A.)

Section 2162.4 states in relevant part: "You may believe it appropriate to self insure some of the risk independently or as part of a group or pool and purchase insurance for the remainder of the risk. Where you decide to fund all or some of the risk covered through self-insurance, payments into a fiduciary fund are allowable costs if you or the pool sets up a program which meets the conditions specified in § 2162.7. . . ."

Oroville provided health benefits to its employees through a combination of commercial insurance and a reserve fund, which it refers to as self-insurance. On a monthly basis, it deposited money into its reserve fund, based on the total health care claim expenses from the prior year and on the number of employees. Oroville used money from the fund to pay health claims for services provided to its employees outside of its own facility. To supplement this program, Oroville purchased a commercial insurance policy for a specific "stop loss" limit of $100,000 and an annual aggregate limit of $3.8 million. In other words, the policy paid medical expenses exceeding $100,000 for an individual employee and expenses exceeding $3.8 million for all employees during the entire year.

In its Medi-Cal cost report submitted to DHS, Oroville claimed $3,486,311 in health care costs for employees, including $1,870,088 paid to outside providers for services rendered.

DHS audited the report and determined that Oroville's reserve fund did not meet the self-insurance requirements of section 2162.7, which meant that Oroville was not entitled to reimbursement for the full amount claimed. Instead, DHS treated the amounts paid as insurance deductibles pursuant to section 2162.5 (which limits the reimbursable amount) and allowed reimbursement of only $893,496 for services from outside providers.

Oroville filed a request for a formal administrative hearing, asserting the costs were for reimbursable self-insurance, and DHS erred in determining the health care payments were deductibles.

Following a hearing, the administrative law judge (ALJ) found that Oroville's reserve fund did not meet the requirements of section 2162.7 for a self-insurance program because the fund was maintained by Oroville, rather than an independent fiduciary, and annual certified statements prepared by an independent actuary, insurance company, or broker were not filed with an intermediary. The ALJ concluded the health care payments were deductibles within the meaning of section 2162.5. Thus, the ALJ sustained DHS's audit adjustment, but did so "with some reluctance" because Oroville's costs were not excessive and the reimbursement amount allowed by DHS was inadequate (in fact, it appeared that the cost for Oroville's method of insuring its employees was lower than the cost of commercial health care insurance or of a self-insurance program that meets the requirements of section 2162.7).

The ALJ's proposed decision was adopted as DHS's final decision.

Oroville filed a petition for writ of mandate in the superior court, challenging DHS's decision that the costs were deductibles. The court found that Oroville's "self-insurance" did not fit the requirements of the PRM for self-insurance, and that the health care expenses more closely resembled the payment of deductibles within the meaning of section 2162.5. Accordingly, it denied the petition for writ of mandate.

## DISCUSSION

### I

Oroville contends that DHS misinterpreted PRM section 2162.7 in disallowing reimbursement for money expended on outside provider services pursuant to Oroville's self-insurance plan.

Section 2162.7 states in pertinent part: "A. Definition of Self-Insurance.— Self-insurance is a means whereby a provider(s), whether proprietary or nonproprietary, undertakes the risk to protect itself against anticipated liabilities by providing funds in an amount equivalent to liquidate those liabilities. [¶] If a provider enters into an agreement with an unrelated party that does not provide for the shifting of risk to the unrelated party, such an agreement shall be considered self-insurance. For example, any agreement designed to provide administrative services only shall be considered self-insurance and must meet the requirements specified below. *If administrative services agreements do not meet these requirements, any amounts funded as part of the agreement will not be allowed. Payments from the fund, however, will be treated on a claim-paid basis as specified in §2162.3.*"[1] (Italics added.)

■ The various requirements for a self-insurance plan are set forth in subdivisions B through E of section 2162.7. Pursuant to subdivision B, the provider must "establish[] a fund with a recognized independent fiduciary such as a bank, a trust company, or a private benefit administrator." In addition, "[t]he provider . . . and fiduciary must enter into a written agreement which includes all of the following elements": (1) the parties' legal responsibilities; (2) that the fiduciary has legal title to the fund and has responsibility for its administration and control; (3) that money will be withdrawn only for health care costs; (4) that upon termination from the Medicare program, the provider must obtain a determination of the adequacy of the fund balance; (5) that the fiduciary must prepare a financial statement annually; and (6) that income earned by the fund becomes part of the fund. (§ 2162.7, subd. B.)

Oroville does not dispute the determination by DHS, the ALJ, and the superior court that Oroville's self-insurance plan did not comply with the requirements of section 2162.7 because Oroville did not maintain a fund with an independent fiduciary. Nevertheless, Oroville argues that it is entitled to reimbursement pursuant to the "claim-paid" language of section 2162.7 italicized above. Oroville misinterprets the language in question.

■ Subdivision B of section 2162.7 mandates that to qualify as a self-insurance plan, the provider (here, Oroville) must establish a fund with a recognized independent fiduciary *and* must enter into a written agreement including specific requirements concerning the administration of the fund. Subdivision A states in pertinent part: "If administrative services agreements

---

[1] *Section 2162.3 of the PRM states: "Self-Insurance.—You may believe that it is more prudent to maintain a total self-insurance program (i.e., the assumption by you of the risk of loss) independently or as part of a group or pool rather than to obtain protection through purchased insurance coverage. If such a program meets the conditions specified in § 2162.7, payments into such funds are allowable costs."*

do not meet these requirements, any amounts funded as part of the agreement will not be allowed. Payments *from* the fund, however, will be treated on a claim-paid basis as specified in §2162.3." (Italics added.) Curiously, section 2162.3 says nothing about any payments "from" a self-insurance fund; it simply says payments "into" such a fund are allowable costs, but only if the fund meets the conditions of section 2162.7.

It thus appears that section 2162.7's reference to payments treated on a "claim-paid" basis simply means that if the requisite written agreement with an independent fiduciary is somehow deficient, amounts contributed to the fund maintained by the fiduciary will not be allowable costs, but payments from the fund for employee health care costs may be reimbursed on a claim-paid basis. (*Queen's Medical Center v. Blue Cross and Blue Shield Assoc.*, HCFA Decision (Dec. 21, 1990) PRRB-Dec. No. 91-D2, p. 3 [Medicaid & Medicare Guide (CCH) ¶ 38,959] (hereafter *Queen's Medical*) ["if the administrative service agreement does not meet the requirements of Section 2162.7, any amounts funded as part of the agreement will not be allowed, but payment from the fund will be treated on a 'claims-paid' basis"].)

■ While section 2162.7 specifies that payments from a self-insured fund for employee health care costs may be reimbursed on a claim-paid basis, nothing in the language of the section permits the provider to avoid the section's requirement that for such reimbursement to be obtained, the fund must be established with a recognized independent fiduciary. Both the ALJ and the trial court found that Oroville maintained its own reserve fund rather than establish a fund with a fiduciary. Oroville has not challenged those findings. Therefore, the "claim-paid" language does not apply because this case does not concern a situation where payments are made from a fund *maintained by an independent fiduciary* with a deficient administrative services agreement that fails to meet the requirements of section 2162.7.

Relying on *Queen's Medical* and *Indian River Memorial Hospital v. Blue Cross and Blue Shield Assoc.* (Mar. 15, 1989) PRRB-Dec. No. 89-D31 [Medicaid & Medicare Guide (CCH) ¶ 37,810] (hereafter *Indian River*), Oroville argues that section 2162.7 has been interpreted as allowing reimbursement on a claim-paid basis under circumstances similar to this case. Oroville's reliance on the cited cases is misplaced.

Observing that section 2162.7 requires a fund must be established with an independent fiduciary, *Indian River* found the Florida patient compensation fund had "essentially the same obligations and powers required for the fiduciary of a self-insurance fund." (*Indian River, supra*, PRRB-Dec. No. 89-D31 at pp. 10–11.) In other words, the provider made contributions to

a fund maintained by the equivalent of an independent fiduciary. Here, in contrast, Oroville's fund is not managed by an entity with essentially the same obligations and powers required of a fiduciary; Oroville maintains its own reserve fund.

*Queen's Medical* found that the patient compensation fund (PCF), an independent state fund in which the provider had been enrolled, dissolved one month prior to the end of the provider's cost year. Under the circumstances, "the most equitable treatment [was] to allow reimbursement for claims paid that would have been covered by the PCF." (*Queen's Medical, supra,* PRRB-Dec. No. 91-D2 at pp. 2, 5.) Oroville points to no similar equitable considerations in the present case.

Simply stated, Oroville has not established that DHS misapplied section 2162.7.

II

DHS allowed Oroville a partial reimbursement for amounts paid for health care services, finding that the payments were deductibles within the meaning of section 2162.5.

Oroville argues DHS's definition of a deductible is unreasonable and should not be applied.

Section 2162.5 states: "Where you, at your option, are willing to commit your resources toward meeting first dollar losses through a deductible (as defined below), losses relating to the deductible are allowable costs in the year paid without funding if the aggregate deductible is no more than the greater of 10 percent of your (or, if appropriate, a chain organization's) net worth—fund balances as defined for Medicare cost reporting purposes—at the beginning of the insurance period or $100,000 per provider. The same rule applies where you coinsure with an insurance carrier. This requirement is deemed a reasonable test as to whether you are acting prudently in this regard. So long as you stay within the above limitations, you can be assumed to be exercising sound judgment in deciding to meet first dollar losses or coinsurance payments out of available resources. This requirement also permits you to pay reasonable losses without incurring costs to fund such payments. If your deductible or coinsurance exceeds the above requirements and the provider does not make payments into a fiduciary fund as required by §2162.7, any losses paid by the provider in excess of the greater of 10

percent of the provider's or, if applicable, a chain organization's net worth, or $100,000 per provider, are not allowable. [¶] *For purposes of this section, a 'deductible' refers to the amount of first dollar losses not covered by a purchased insurance policy, a funded self-insurance program, or a combination of both.*" (Italics added.)

Because Oroville's reserve fund was not a qualifying self-insurance plan and thus the "claim-paid" language of section 2162.7 did not apply, and because Oroville's policy required it to pay the first $100,000 of health care costs for an individual employee or the first $3.8 million of costs for all employees, the payments in question were first-dollar losses not covered by a purchased insurance policy or a self-insurance program. Hence, it appears DHS did not err in determining that the payments were deductibles under the definition provided in section 2162.5.

Oroville argues that treating payments for outside health care service as deductibles, which limits the amount of reimbursement rather than reimbursing for the entire amount paid, is inconsistent with the treatment of payments for health care services provided by Oroville, which are treated as fringe benefits and are wholly reimbursable.

 Assuming the correctness of the factual predicates underlying Oroville's argument, the disparity in the method of treatment of the different costs does not permit us to ignore the relevant sections of the PRM simply because we may not understand or agree with the underlying policy decisions. (Cf. *Superior Court v. County of Mendocino* (1996) 13 Cal.4th 45, 52–53 [51 Cal.Rptr.2d 837, 913 P.2d 1046] [judiciary may not undertake to evaluate the wisdom of the policies embodied in legislation; the choice among competing policy considerations in enacting laws is a legislative function].) If Oroville believes deductibles should not be limited as set forth in section 2162.5, or payments for health care costs from a reserve fund maintained by the provider should be treated as self-insurance, Oroville's remedy is to ask the branch of government responsible for the rules to change them.

III, IV*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 468.

## DISPOSITION

The judgment is affirmed.

Blease, J., and Sims, J., concurred.

On January 3, 2007, the opinion was modified to read as printed above.