Filed 8/10/20

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| OAK VALLEY HOSPITAL DISTRICT, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> STATE DEPARTMENT OF HEALTH CARE SERVICES, <br><br> Defendant and Appellant. | C085869, C085882, & C085883 <br><br> (Super. Ct. Nos. 34-2016-80002320-CU-WM-GDS, 34-2016-80002307-CU-WM-GDS, & 34-2016-80002437-CU-WM-GDS) |
| RIDGECREST REGIONAL HOSPITAL, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> STATE DEPARTMENT OF HEALTH CARE SERVICES, <br><br> Defendant and Appellant. | C086335 <br><br> (Super. Ct. No. 34-2016-80002471-CU-WM-GDS) |

APPEAL from a judgment of the Superior Court of Sacramento County, Michael P. Kenny, Judge. Affirmed.

1

Xavier Becerra, Attorney General, Julie Weng-Gutierrez, Assistant Attorney General, Ismael A. Castro and Brenda A. Ray, Deputy Attorneys General for Defendant and Appellant.

Douglas S. Cumming; Davis Wright Tremaine and Jordan B. Keville for Plaintiff and Respondent.

These four consolidated appeals present the question of whether medical providers who provide services under California's Medi-Cal program are entitled to reimbursement for the costs of providing in-house medical services for their own employees through "nonqualifying" self-insurance programs.[1] Nonqualifying self-insurance programs are those that do not meet all the requirements of section 2162.7 in the Centers for Medicare and Medicaid Services' Publication 15-1 (Centers for Medicare and Medicaid Services, The Provider Reimbursement Manual, § 2162.7, p. 21-42.7 (rev. 406, 08-98); hereafter Provider Reimbursement Manual).[2] Even for nonqualifying self-insurance programs, however, the Provider Reimbursement Manual allows providers to claim reimbursement for reasonable costs on a "claim-paid" basis. (§ 2162.7, par. A, p. 21-42.7 (rev. 406, 08-98).)

Here, Oak Valley Hospital District (Oak Valley) and Ridgecrest Regional Hospital (Ridgecrest) have self-insurance programs providing health benefits to their employees.

---

[1] These consolidated appeals comprise *Oak Valley Hospital District v. Department of Health Care Services* (C085869) (relating to the audit of the fiscal year ending June 30, 2008) (*Oak Valley I*); *Oak Valley Hospital District v. Department of Health Care Services* (C085882) (relating to the audit of the fiscal year ending June 30, 2010) (*Oak Valley II*); *Oak Valley Hospital District v. Department of Health Care Services* (C085883) (relating to the audit of the fiscal year ending June 30, 2012) (*Oak Valley III*); and *Ridgecrest Regional Hospital v. Department of Health Care Services* (C086335) (*Ridgecrest*) (relating to the audit of fiscal periods ending on Jan. 31, 2010, & Jan. 31, 2011).

[2] Undesignated section citations are to the Provider Reimbursement Manual.

Claims for in-house medical services to their employees were included in cost reports submitted to the State Department of Health Care Services (DHS). DHS allowed the costs when Oak Valley and Ridgecrest employees received medical services from outside providers but denied costs when the medical services were provided in-house. Oak Valley and Ridgecrest sought formal hearings on the denials of their costs for these in-house medical services. In each of the cases, DHS determined claims paid to Oak Valley and Ridgecrest out of their self-insurance plan for in-house medical services rendered to their employees are not allowable costs. Oak Valley and Ridgecrest then petitioned the trial court for writs of administrative mandate. The trial court granted the writ petitions on grounds that costs of in-house medical services are reimbursable so long as they are " 'reasonable' " as defined by the Provider Reimbursement Manual. DHS has timely appealed in each case.

In *Oak Valley I*, DHS contends the trial court erred because (1) Oak Valley's self-insurance program does not meet the requirements for a qualified plan under section 2162.7, (2) the costs claimed by Oak Valley are not reasonable because they represent charges that exceed actual costs, and (3) the claimed costs are also not reasonable because they run afoul of related party principles. The issues and arguments in *Oak Valley II* and *Oak Valley III* are substantively the same as in *Oak Valley I*, but relate to later fiscal periods. *Oak Valley II* adds the contention that DHS properly denied the in-house medical services costs on the bases of sections 332, 332.1, and 2144.4. *Ridgecrest* presents substantively the same legal issues and arguments as the *Oak Valley* cases, but as they relate to Ridgecrest Regional Hospital.

We conclude Oak Valley's and Ridgecrest's self-insurance programs do not meet the requirements of a qualified plan under section 2162.7. However, neither medical provider ever claimed they operated qualified plans. We reject DHS's contention that Oak Valley and Ridgecrest costs relating to in-house medical services for their employees are inherently unreasonable. Oak Valley and Ridgecrest incur actual costs in providing

3

in-house medical services for their employees in the form of time expended by medical professionals, supplies required for treatment, and facilities within which treatment can take place. To the extent DHS argues the cost reports are not per se unreasonable, but unreasonable under the circumstances of the actual treatments of Oak Valley and Ridgecrest employees, we determine the evidence in the record supports the trial court's findings that expert testimony established Oak Valley and Ridgecrest incur actual expenses in providing in-house medical services for their employees that are not otherwise reimbursed.

We reject DHS's assertions regarding violation of related party principles for failure to develop the argument. Moreover, DHS did not raise the related party argument during the administrative or trial court hearings in these cases. We discern nothing in sections 332, 332.1, and 2144.4 that supports DHS's categorical denial of in-house treatment costs. Sections 332 and 332.1 are inapposite because they apply to circumstances in which the patient is billed directly, whereas this case involves the question of reimbursement for hospital self-insurance plans that are not fully qualified under section 2162.7. Section 2144.4 states that fringe benefits, such as unrecovered costs for in-house treatment of employees, *are* allowable costs. Finally, we decline to address DHS's assertion it calculated costs correctly in *Ridgecrest*, for failure to set forth the facts in the light most favorable to the judgment. Contrary to appellant's burden on appeal, DHS sets forth a statement of facts in which it ignores the majority of the testimony introduced during the administrative hearing. Accordingly, we affirm the trial court's granting of the petitions for writs of administrative mandate.

BACKGROUND

*Medi-Cal Reimbursements to Health Care Providers*

In *Oroville Hospital v. Department of Health Services* (2006) 146 Cal.App.4th 468 (*Oroville Hospital*), this court explained: "Medicaid is a program through which the federal government provides financial assistance to qualified participating states for

4

furnishing medical assistance to the poor. (42 U.S.C. § 1396 et seq.; *Children's Hospital & Medical Center v. Bontá* (2002) 97 Cal.App.4th 740, 747.) California participates in Medicaid through the Medi-Cal program. (Welf. & Inst. Code, § 14000 et seq.; *Children's Hospital & Medical Center v. Bontá, supra*, 97 Cal.App.4th at p. 747.) DHS administers the Medi-Cal program pursuant to the Medi-Cal Act and DHS's regulations. (Welf. & Inst. Code, § 14000 et seq.; Cal. Code Regs., tit. 22, § 50000 et seq.)" (*Id.* at pp. 471-472.) "DHS is required to reimburse Medi-Cal providers of hospital services for their Medi-Cal costs. ([Welf. & Inst. Code,] § 14170; Cal. Code Regs., tit. 22, § 51536.) . . . Hospitals [providing Medi-Cal services] are to be reimbursed for their '[a]llowable costs determined in accordance with applicable *Medicare* standards and principles of reimbursement.' (Cal. Code Regs., tit. 22, § 51536, subd. (a)(2), italics added; [citation].)" (*Redding Medical Center v. Bonta* (2004) 115 Cal.App.4th 1031, 1035.)

Consistent with Medicare standards, Medi-Cal providers such as Oak Valley and Ridgecrest may seek reimbursement for self-insured programs in which they provide medical benefit to their own employees. (§ 2144.4, p. 21-31 (rev. 375, 12-93) [including a provider's "unrecovered cost of medical services rendered to employees" among fringe benefits includable in a provider's costs].) To this end, the Provider Reimbursement Manual informs providers: "You may believe that it is more prudent to maintain a total self-insurance program (i.e., the assumption by you of the risk of loss) independently or as part of a group or pool rather than to obtain protection through purchased insurance coverage." (§ 2162.3, p. 21-42.6 (rev. 444, 03-11).)

If a provider's self-insurance program qualifies under section 2162.7, contributions into the program fund are reimbursable. (§ 2162.3, p. 21-42.6 (rev. 444, 03-11) ["If such a program meets the conditions specified in §2162.7, payments into such funds are allowable costs"].) However, if a provider's self-insurance program does not qualify under section 2162.7, contributions *into* the program fund are not reimbursable. The Provider Reimbursement Manual states: "If a provider enters into an agreement with

5

an unrelated party that does not provide for the shifting of risk to the unrelated party, such an agreement shall be considered self-insurance. For example, any agreement designed to provide administrative services only shall be considered self-insurance and must meet the requirements specified below. If administrative services agreements do not meet these requirements [for a qualifying plan as defined in section 2162.7], any amounts funded as part of the agreement will not be allowed. *Payments from the fund, however, will be treated on a claim-paid basis* as specified in §2162.3." (§ 2162.7, par. A, p. 21-42.7 (rev. 406, 08-98), italics added.)

Regardless of whether the medical provider has a qualified or nonqualified self-insurance program, "[a]ll payments to providers of services must be based on the reasonable cost of services covered under title XVIII of the Act and related to the care of beneficiaries . . . . Reasonable cost includes *all necessary and proper costs incurred in rendering the services*, subject to principles relating to specific items of revenue and cost." (§ 2100, p. 21-2.5 (rev. 454, 09-12), italics added.) Section 2102.1 elaborates on this principle and states, in pertinent part, that "[i]t is the intent of the program that providers are reimbursed the actual costs of providing high quality care, regardless of how widely they may vary from provider to provider, except where a particular institution's costs are found to be substantially out of line with other institutions in the same area which are similar in size, scope of services, utilization, and other relevant factors." (§ 2102.1, p. 21-2.5 (rev. 454, 09-12).)

### *Oak Valley and Ridgecrest Nonqualifying Self-insurance Plans*

Oak Valley and Ridgecrest are acute care hospitals that provide Medi-Cal services. Both hospitals provide health benefits to their employees through self-insurance programs that do not qualify under section 2162.7. Employees of Oak Valley and Ridgecrest who participated in the plans could obtain medical services in house or from third party providers. Claims for employee treatments were submitted to the self-insurance plans' third party administrators. The third party administrators reviewed the

6

claims, determined whether they were payable, and if payable would draw the money from a bank account funded by the medical providers to pay approved claims.

Consistent with Medi-Cal rules, Oak Valley and Ridgecrest submitted cost reports to DHS.  As noted above, *Oak Valley I* relates to the fiscal year ending June 30, 2008, *Oak Valley II* relates to the fiscal year ending June 30, 2010, *Oak Valley III* relates to the fiscal year ending June 30, 2012, and *Ridgecrest* relates to those ending on January 31, 2010, and January 31, 2011.  These cost reports submitted to DHS included as allowable costs claims paid for the medical services rendered to Oak Valley's and Ridgecrest's employees under the nonqualifying self-insurance programs.

DHS audited the cost reports and, as relevant to these appeals, eliminated all claims paid under the self-insurance program for in-house medical services for Oak Valley and Ridgecrest employees.  Oak Valley and Ridgecrest pursued informal hearings regarding the outcome of DHS's audits.  When DHS confirmed its denial of in-house medical treatment expenses under the self-insurance plans, Oak Valley and Ridgecrest requested formal hearings.

### *Formal Administrative Hearings*

On July 21, 2015, a formal administrative hearing was conducted in *Oak Valley I*. We recount in some detail the proceedings of the formal administrative hearing in *Oak Valley I* because it established the evidence and contentions of the parties at the administrative level in a manner consistent with the approach in these consolidated cases.[3]

---

[3]     The record in *Oak Valley II* contains additional evidence and argument regarding whether Provider Reimbursement Manual sections 332, 332.1, and 2144.4 apply to Oak Valley's in-house medical treatment costs as unrecovered costs.  We recount the record relating to these sections of the Provider Reimbursement Manual in parts IV and V, below.  In part VI, below, we address the administrative record as it relates to *Ridgecrest.*

During the *Oak Valley I* administrative proceeding, DHS introduced the testimony of Adrian Peña. Peña testified he was the DHS auditor who reviewed the Oak Valley cost report for the fiscal period that ended on June 30, 2008. Peña explained that he disallowed Oak Valley's claim for in-house medical services for its own employees under its nonqualifying self-insurance program. In Peña's view, "there's no actual cost incurred in that case [of in-house medical treatment for employees] because there's no money out of pocket." However, when Oak Valley's employees sought medical treatment from third parties under the same self-insurance plans, the claims were allowed.

On cross-examination, Peña acknowledged the distinction between in-house and third party medical treatment is not supported by section 2162.7:

"Q. Does section 2162.7 specifically make such a distinction [between claims paid for in-house treatment and those to third parties]?

"A. [Peña] No."

Peña agreed that inclusion of a claim for treatment in a cost report to DHS did not cause the claim to be reimbursed or paid. Instead, claims for in-house medical services for employees are required for inclusion in Oak Valley's cost report:

"Q. . . . When a provider prepares a cost report and they include the cost of treating patients in the cost report, does the act of including those costs in the cost report in and of itself cause claims to be generated, processed and paid?

"A. [Peña] No.

"Q. Isn't it true that a hospital's total costs of treating patients have to be included in the cost report to ensure proper cost finding?

"A. Yes."

In *Oak Valley I*, DHS introduced no other testimony than that of Peña.

In support of its contentions, Oak Valley called Rodney Phillips as a witness. Phillips served as a reimbursement consultant for Oak Valley during the relevant audit period and is a certified public accountant. Phillips testified about the components of the

8

costs associated with in-house medical services for Oak Valley employees. He noted that contractual adjustments were made to the in-house medical treatment claims to ensure there would be no request for profit through a markup but only the amount approved as reasonable by the third party administrator.

"Q. [Oak Valley's counsel] [I]s Oak Valley seeking to include a markup in the cost which it is asking here for the Administrative Law Judge to recognize as allowable?

"A. No.

"Q. And what's the basis for your opinion in that regard?

"A. The previous exhibits that we discussed regarding the contractual adjustments.

"The fact that the contractual adjustments were not included tells us that what the Provider did claim was the amount of claims that were paid and processed by its third-party administrator and nothing more."

Phillips also provided testimony touching on whether in fact Oak Valley had been doubly compensated for claims relating to in-house medical services for its employees. Phillips testified that "in this case [Oak Valley] ha[s] not attempted to recover more than the claims that were paid and processed. They were claimed only once. And that once was in their health plan expenditures, and it was based upon paid claims processed by the third-party administrator. [¶] I know of no other place where they attempted to claim those expenses." In support, Oak Valley introduced evidence in the form of Worksheet A. Regarding this document, Phillips explained this evidence "established that the allowances are not included in Worksheet A. They never were claimed in the cost report."

On this point, Phillips testified, "The cost of providing a health plan benefit to the employee is separate and distinct from the operating expenses of operating the equipment and the employee and the personnel." "The additional information is the exhibits we've provided where we established that the contractual adjustments are not included on

9

Worksheet A and have not been included in the cost report as an allowable cost." For this reason, the hospital was not reimbursed twice for providing in-house medical care to its employees. In short, Oak Valley established that it did not, in fact, double claim in-house medical treatment as an allowable cost. Instead, Phillips's testimony showed Oak Valley ensured that its claim of in-house medical treatment was properly claimed only once.

Responding to Peña's disallowance of the costs of providing in-house medical treatment, Phillips stated that the disallowance "essentially says by zeroing that out, it says the cost of care to those patients is zero; that the cost is zero. That's simply false."

The administrative law judge issued a proposed decision that rejected Oak Valley's position. The proposed decision affirmed DHS's categorical elimination of the cost of medical services provided in-house to Oak Valley employees even while allowing payment of costs for medical services for employees by outside providers of health care services. The administrative law judge reasoned that because payment for in-house medical services was paid "using monies drawn from a bank account funded by Oak Valley . . . that payment of the In-House Service claims did not represent a real cost because Oak Valley was simply reimbursing itself." (Fn. omitted.)

The administrative law judge concluded payment of the self-insurance program's bank account necessarily meant service claims did not represent an actual cost but mere reimbursement of itself. The administrative law judge reasoned: "Payment origin and destination were one and the same, and at all times Oak Valley retained ownership of the funds. . . . [T]he actual expenses incurred by Oak Valley in providing medical care to its employees were already included in the cost centers of the Oak Valley cost report where the services were rendered. To also allow the claim-paid costs for In-House Services would constitute an impermissible double expensing (referred to by witnesses as double reimbursement) of the costs."

10

Oak Valley and Ridgecrest petitioned for administrative mandate. The trial court's decision in *Oak Valley I* is representative in its reasoning and result on the common issues. In *Oak Valley I*, the trial court issued a writ of administrative mandate commanding DHS to set aside its decision. In issuing the writ, the trial court relied on the testimony of Phillips. The trial court explained, "Oak Valley is not reimbursed for the cost of providing a self-insured health plan by virtue of the fact that the total costs of treating all patients (including employees) are included in the cost centers." Phillips provided evidence that DHS's adjustment erred because Oak Valley was entitled to recover its in-house medical service costs under section 2162.7 because "it's the only manner in which [Oak Valley] can claim [its] employee expenses related to their health insurance."

The trial court also determined DHS erred in applying different standards of "reasonableness" to costs depending on whether the costs related to qualified or nonqualified plans. Thus, the trial court noted: "Both sections 2162.3 and 2162.7 provide a method by which a Medi-Cal provider can seek reimbursement for the costs incurred in providing medical coverage to its employees via a self-insurance plan. If the plan is qualified, section 2162.3 states that 'payments into such funds are allowable costs.' When the plan is unqualified, section 2162.7, subdivision (A) states: 'Payments from the fund . . . will be treated on a claim-paid basis as specified in § 2162.3.' The Court finds it is unreasonable to interpret only one of these provisions as creating a 'predetermination of reasonableness' and not the other. Further, both sections are subject to section 2102.[1]'s general reasonableness requirement."

The trial court made substantively the same decision in *Oak Valley II* and *Oak Valley III* as in *Oak Valley I*, as the same legal issues relate to later fiscal periods. The exception is that in *Oak Valley II*, the trial court additionally addressed DHS's argument that in-house medical services are not allowable costs under sections 332, 332.1, and

2144.4.  The trial court's decision in *Ridgecrest* is substantively the same as in the *Oak Valley* cases, except that it pertains to Ridgecrest Regional Hospital.  No additional legal issues are presented in *Ridgecrest* that are not resolved by our conclusions in the *Oak Valley* cases.

DISCUSSION

I

***Standard of Review***

Under Code of Civil Procedure section 1094.5, subdivision (a), a writ of administrative mandate may issue for purposes of reviewing the validity of any final administrative order or decision for which a hearing was required.  To this end, subdivision (b) of Code of Civil Procedure section 1094.5 provides that courts shall consider whether the administrative agency "has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion."  That subdivision defines abuse of discretion as an action when an administrative agency "has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence."

In reviewing claims of insufficient evidence in support of an agency's decision, "the trial court, as here, is authorized by law to exercise its independent judgment on the evidence, 'abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence.'  (Code Civ. Proc., § 1094.5, subd. (c).)  In such a case our review on appeal is limited.  We will sustain the trial court's findings if they are supported by substantial evidence.  (*Kazensky v. City of Merced* (1998) 65 Cal.App.4th 44, 52; see *Moran v. Board of Medical Examiners* (1948) 32 Cal.2d 301, 308-309.)  In reviewing the evidence, we 'resolve all conflicts in favor of the party prevailing in the superior court and must give that party the benefit of every reasonable

12

inference in support of the judgment.' (*Kazensky, supra*, at p. 52.)" (*Kifle-Thompson v. State Bd. of Chiropractic Examiners* (2012) 208 Cal.App.4th 518, 523 (*Kifle*).)

In the argument sections of its briefs, DHS contends it is entitled to reversal on grounds it is entitled to deference for its interpretation of Provider Reimbursement Manual sections. Although an agency may be entitled to deference in interpreting its *own* regulations and policies, DHS is not the agency that promulgated the Provider Reimbursement Manual. Instead, the Provider Reimbursement Manual was issued by the Centers for Medicare and Medicaid Services. Thus, deference is owed only to the Secretary of the (federal) Department of Health and Human Services. (*Community Care Foundation v. Thompson* (D.D.C. 2006) 412 F.Supp.2d 18, 22 (*Community Care*) ["The high degree of deference due to the Secretary's interpretation of Medicare regulations extends to the [Provider Reimbursement Manual] provisions, which are themselves interpretation of regulations"].) Neither party has presented us with the Secretary's interpretation of the Provider Reimbursement Manual sections pertinent to these cases. And our research has not revealed any guidance by the Secretary on the sections in the Provider Reimbursement Manual relevant to these cases. Accordingly, we reject DHS's claim that it is entitled to any deference to its reading of the Provider Reimbursement Manual.

## APPEAL BY DHS IN OAK VALLEY I

### II

### *Whether Oak Valley Self-insurance Meets the Requirements for a Qualified Plan*

DHS argues that Oak Valley's payments from its unqualified self-insurance funds are only allowable costs on a claims paid basis. DHS then elaborates that "payments into the self-insurance fund are not allowable costs, while payments funded by Oak Valley and paid from the fund by its third party vendor . . . may be allowable costs only on a claim-paid basis."

Oak Valley has never disputed that it has a nonqualifying self-insurance plan or that the allowable costs are limited to claims paid. Moreover, there is no dispute that section 2162.7, paragraph A, of the Provider Reimbursement Manual allows "[p]ayments from the [self-insurance] fund" to be considered "on a claim-paid basis . . . ." (§ 2162.7, par. A, p. 21-42.7 (rev. 406, 08-98.)

### A.

### *Whether In-house Treatment Costs are Categorically Nonallowable*

The gravamen of DHS's argument is not clearly articulated either in its heading or in the opening brief's discussion. As we can best discern, it appears that DHS contends, as a matter of law, Oak Valley's payments to itself necessarily represent charges that exceed the actual cost of providing services. This position would appear consistent with the testimony of Peña, DHS's only witness at the administrative hearing. Peña testified he categorically disallowed Oak Valley claims for in-house medical services for its own employees under its nonqualifying self-insurance program. To the extent that this represents DHS's position, we reject it.

The flaw in this position is illustrated by Peña's assertion that in-house medical treatment by Oak Valley was a nonallowable cost, but third party medical treatment was an allowable cost. Peña himself acknowledged Provider Reimbursement Manual section 2162.7 does not distinguish between claims paid for in-house medical treatment and those paid to third parties. On appeal, DHS also acknowledges that costs of third party commercial insurance are allowed.

We decline Oak Valley's invitation to extend the holding of our decision in *Oroville Hospital*, *supra*, 146 Cal.App.4th 468, to the circumstances of this case. The question presented in *Oroville Hospital* was whether DHS erred in determining the hospital could not claim reimbursement in the absence of a recognized independent fiduciary. (*Id.* at pp. 473, 475.) This court held that section 2162.7 requires an independent fiduciary before claims may be paid. (*Oroville Hospital,* at pp. 475-476.)

14

This court also rejected the hospital's alternate argument that payment should be allowed nonetheless to avoid inconsistent treatment of payments for health care services. (*Id.* at p. 477.) This court noted the hospital's "remedy is to ask the branch of government responsible for the rules to change them." (*Ibid.*) Neither holding – that an independent fiduciary is required for a self-administered plan or that a policy of disparate treatment of different kinds of costs should be changed by the policy makers – requires extension to help us conclude section 2162.7 allows payment of in-house medical treatments of employees on a claim-paid basis.

Therefore, we agree with the trial court that Provider Reimbursement Manual section 2162.7 does not provide for the categorical denial of costs for in-house treatment under a nonqualifying self-insurance plan. Section 2162.7, paragraph A, states only that payments "will be treated on a claim-paid basis" without distinguishing between in-house and third party treatment. (§ 2162.7, par. A, p. 21-42.7 (rev. 406, 08-98.) The only categorical prohibition on costs is section 2102.1's requirement that any allowable costs meet the standard of reasonableness. The trial court correctly determined the Provider Reimbursement Manual does not categorically bar reimbursement for costs of Oak Valley's in-house medical services for its employees.

**B.**

***Whether Oak Valley's Paid Claims for In-house Treatment are Unreasonable***

Again, the exact point of DHS's argument is difficult to discern. DHS's argument heading asserts that "Oak Valley's paid claims for services rendered in-house to its employees are not reasonable costs." This argument might either be legal in nature (in that costs are unreasonable as a matter of law) or factual in nature (in that the in-house treatment costs claimed by Oak Valley were unreasonable as a matter of fact). To the extent the argument is one of law, we have already concluded in part II A. that section 2162.7 of the Provider Reimbursement Manual does not categorically disallow in-house treatment costs so long as they meet the standard of reasonableness. To the extent DHS

15

argues the actual costs claimed by Oak Valley were unreasonable under the factual circumstances, we reject the argument as unsupported by the record.

DHS asserts that "the claims paid to Oak Valley for services rendered to its employees in-house were for payment of billed charges, not actual costs to Oak Valley, in that the actual costs were already included in the cost report in the various cost centers where the employees were treated." We note DHS also states that "[t]he parties agree that Oak Valley may have incurred costs in treating its employees in-house." Thus, it appears DHS understands that Oak Valley incurred *some* costs in providing in-house treatment, but asserts those costs did not meet the test of reasonableness.

More importantly for purposes of this appeal, DHS did not present testimony or evidence to support this newly-raised factual theory that the actual costs were already included in the cost reports. At the administrative hearing, Peña testified only that in-house costs were inherently unreasonable. To the contrary, Oak Valley did present evidence that Oak Valley incurs actual costs when it provides in-house medical treatment to its employees and that these costs are not otherwise reimbursed. In considering the evidence, we resolve all conflicts in favor of Oak Valley because it prevailed in the superior court and give Oak Valley the benefit of every reasonable inference in support of the judgment. (*Kifle, supra,* 208 Cal.App.4th at p. 523.) We conclude the record supports the trial court's finding it was "persuaded by Phillips'[s] testimony that Oak Valley incurs an actual expense in providing self-insured medical coverage to its employees as a fringe benefit that is not reimbursed by Oak Valley including the cost of treating all of its patients in the cost center sections of the Cost Report."[4]

---

[4]     During the administrative hearings in the other cases in these consolidated cases, Phillips's testimony provides substantial evidence in support of the trial court's findings that Oak Valley and Ridgecrest have actual expenses they may claim for in-house medical services provided to their employees.

16

DHS next asserts that "health coverage plans offered to employees is a fringe benefit and employee fringe benefits are allowable cost. . . . However no such documentation was provided." In support of this assertion, DHS does not provide a record citation. This does not meet the appellant's burden and the assertion is deemed forfeited. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246.)

DHS asserts that if it "were to allow the claims paid by [the third party administrator] to Oak Valley for treating its employees in-house, Oak Valley would receive reimbursement from the Medi-Cal program for those services in excess of its actual costs." We reject this assertion on the same grounds. Again, the lack of record citation in support of this factual assertion forfeits the claim. (*Nwosu v. Uba*, *supra*, 122 Cal.App.4th at p. 1246.) DHS did not introduce evidence at the administrative hearing on this point. Further, the trial court found, on the basis of testimony by Phillips, that Oak Valley was not receiving reimbursement in excess of the actual costs of its in-house medical services for Oak Valley's employees.

Finally, we note the evidence in the record supports the trial court's finding DHS did not prove Oak Valley received double compensation for its in-house medical services for employees. During the administrative hearing, Phillips explained that contractual adjustments included on a worksheet have not been included in the cost report as an allowable cost. Thus, Oak Valley was not reimbursed twice for the same costs. As this court has previously observed, "A single witness'[s] testimony may be sufficient to satisfy the substantial evidence test" for review of evidence presented at an administrative hearing. (*Mickelson Concrete Co. v. Contractors' State License Bd.* (1979) 95 Cal.App.3d 631, 634.) Under the standard of review applying to this case, we conclude the evidence in the record supported the trial court's finding that DHS did not prove that Oak Valley claimed or received double compensation for in-house medical treatment of its employees.

## III

### *Whether Oak Valley's Payment Conflicted with Related Party Principles*

DHS asserts that "Oak Valley's payments to itself contradict *related party principles* which prohibit providers from claiming profit and artificially inflating costs which may be generated from a less than arm's-length transaction." (Fn. omitted, italics added.) DHS's opening brief does not discuss the standard for independence of a third party administrator or what facts might support the argument that Oak Valley's third party administrator was not independent. For lack of development, this argument is forfeited. (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52 (*Allen*) ["We are not required to examine undeveloped claims or to supply arguments for the litigants"].)

Moreover, DHS did not raise the issue of whether the Stanislaus Foundation for Medical Care was an independent third party administrator of Oak Valley's self-insurance plan during the administrative hearing. The issue also was not tendered during the trial court's hearing on Oak Valley's writ petition. However, "[t]he general rule is that contentions not raised in the trial court may not be raised for the first time on appeal." (*Wilson v. State Personnel Bd*. (1976) 58 Cal.App.3d 865, 883.) DHS has not developed the record to allow our review of the assertion that the Stanislaus Foundation for Medical Care is not sufficiently independent of Oak Valley to serve as a third party administrator for the self-insurance program.

Accordingly, we affirm the trial court's issuance of the writ of administrative mandate in *Oak Valley I*.

### APPEALS BY DHS IN OAK VALLEY II AND OAK VALLEY III

As we noted in footnote 1, the appeals in *Oak Valley I, Oak Valley II*, and *Oak Valley III* differ in the fiscal periods upon which they focus. Comparing DHS's briefing in *Oak Valley I* to the briefing in *Oak Valley II* and *Oak Valley III*, the briefs are nearly identical in the substance of the arguments presented in *Oak Valley I*, with two additional arguments discussed below. First, DHS argues the trial court erred in rejecting DHS's

18

calculations of Oak Valley's unrecovered costs in the *Oak Valley II* and *Oak Valley III*. Second, DHS contends Oak Valley's payments violate related party principles by Oak Valley "paying itself" for its in-house medical treatments of its employees.

IV

### Whether DHS Properly Calculated Oak Valley's Unrecovered Costs

In *Oak Valley II* and *Oak Valley III*, DHS additionally asserts that it "properly calculated Oak Valley's unrecovered costs in rendering medical services to its employees in-house and adjusted Oak Valley's per diem rate and cost-to-charge ratio." DHS asserts that sections 332.1 and 2144.4 govern the method by which Oak Valley may seek unrecovered costs. The resolution of DHS's contentions turns on the correct interpretation of sections 332.1 and 2144.4. As we explain below, we conclude section 332.1 is inapposite because it applies to circumstances in which the patient is billed directly, whereas this case involves the question of reimbursement for hospital self-insurance plans that are not fully qualified under section 2162.7. Section 2144.4 states that fringe benefits are allowable costs, and includes a provider's unrecovered cost of medical services rendered to employees as one of the examples of a fringe benefit. (§ 2144.4, par. 6, p. 21-31 (rev. 375, 12-93).) This section is not applicable because there is no unrecovered cost.

A.

### Provider Reimbursement Manual

As pertinent to the resolution of this issue, we recount the provisions of three sections in the Provider Reimbursement Manual.

Section 2144.4 provides: "Fringe Benefits *Includable as Provider's Cost.* — Following are examples of fringe benefits: [¶] Provider contributions to certain deferred compensation plans (see §2140ff); [¶] Provider contributions to certain pension plans (see §2142ff); [¶] Paid vacation . . . . [¶] Provider-paid educational courses benefiting the employee's interest; [¶] Provider's unrecovered cost of meals (see §2145) and room

19

and board furnished employees for the employees' convenience; [¶] Provider's unrecovered cost of medical services rendered to employees (see §332.1); and [¶] Cost of health and life insurance premiums paid or incurred by the provider if the benefits of the policy inure to the employee or his/her beneficiary." (§ 2144.4, p. 21-31 (rev. 375, 12-93), underscoring omitted, italics added.)

Due to its centrality to this issue, we quote the entirety of section 332.1:

"Method for Including Unrecovered Cost.--The unrecovered cost of services furnished to employees as fringe benefits may be included in allowable costs by treating the amount actually charged to the employees as a recovery of costs. Where the cost of the service exceeds the amount charged to the employee, the amount charged to the employee would be applied as a reduction in the costs of the particular department(s) rendering the services. If costs should be apportioned by the RCCAC Method, all charges related to employees' services would be subtracted from the total charges used to apportion such costs, so that unrecovered costs relating to employees' allowances would be apportioned between Medicare patients and other patients. Likewise, where an average cost per diem is used to apportion costs, the days applicable to the employees who received the allowances should be removed from the total days used to apportion costs.

"Where the amount charged to an employee exceeds the costs of the services provided, there is no unrecovered cost and, therefore, no cost of fringe benefit. In this case, the amount charged to the employee is not offset against the department costs and the charges for the services given to the employee are not deleted from the total charges. The services furnished to employees are treated the same as services furnished to any other patients." (§ 332.1, p. 3-10 (rev. 280, 01-83), underscoring omitted.)

20

The following two examples are then provided in paragraphs A and B of section 332.1:

A. Example (Where Departmental Costs are Equivalent to 90% of Charges).-

|  | Gross Charges | Costs |
|---|---|---|
| Other than Employees | | |
| Medicare---------------------------- | $ 900 | |
| Non-Medicare--------------------- | 1,800 | |
| | $2,700 | |
| Employees | 300 | |
| Total-------------------------------- | $3,000 | $2,700 |

|  |  |
|---|---|
| Computation of employee fringe benefit (30% *discount*): | |
| To be collected--70% of $300 | ($210) |
| Cost applicable to service provided (90% x $300) | 270 |
| Unrecovered Cost--------------------- | $ 60 |

| | | | |
|---|---|---|---|
| Total charges-------------------------- | $3,000 | Total costs | $2,700 |
| Less: Employee charges-------------- | 300 | Employee payment (Amount charged) | 210 |
| Adjusted charges---------------------- | $2,700 | Adjusted cost | $2,490 |

Payment by Medicare--900/2700 x $2,490 = $830

The unrecovered cost of $60 remains in the departmental costs and is apportioned among the users of the department other than employees.

21

B.  Example (Where Departmental Costs are Equivalent to 50% of
Charges).--

|  | Gross Charges | Costs |
|---|---|---|
| Other than Employees |  |  |
|    Medicare---------------- | $  900 |  |
|    Non-Medicare---------- | 1,800 |  |
|  | $2,700 |  |
| Employees-------------------- | 300 |  |
|  |  |  |
|    Total---------------------- | $3,000 | $1 500 |
|  |  |  |
| Computation of employee fringe benefit (30% discount): |  |  |
| To be collected--70% of $300 |  | ($210) |
| Cost applicable to service provided (50% x $300) |  | 150 |
| Excess of amount charged to employees over cost |  | $  60 |
| Unrecovered Cost----------- |  | None |
| Payment by Medicare (900/3,000 x $1,500)-- |  | $ 450 |

(§ 332.1, par. A, p. 3-10 (rev. 280, 01-83) & par. B, p. 3-11 (rev. 435, 03-08), italics added.)

Section 332 provides:  "Allowances to Employees  [¶]  Allowances, or reduction in charges, granted to employees for medical services as fringe benefits related to their employment are not considered courtesy allowances.  Employee allowances are usually given under employee hospitalization and personnel health programs.  [¶]  The allowances themselves are not costs since the costs of the services rendered are already included in the provider's costs.  However, any costs of the services not recovered by the provider from the charge assessed the employee are allowable costs."  (§ 332, p. 3-9 (rev. 280, 01-83).)

22

## *Administrative Hearing Record*

As in *Oak Valley I*, DHS introduced the testimony of Adrian Peña, who testified about Oak Valley's approach to claiming costs for in-house medical treatments for its employees under its self-insurance program. During the administrative hearing in *Oak Valley II*, DHS also elicited the testimony of Jose Juarez, the auditor who conducted the audit at issue in that case. Juarez testified that he disallowed the third party administrator's payments to Oak Valley for in-house medical services for its employees. After eliminating the in-house treatment costs, he compared "the total amount of the charges related to employees treated in house to the amount in health benefit premiums the employees paid during the subject fiscal year to determine if the employees had received fringe benefit allowances or reductions in charges." Juarez calculated that Oak Valley employees received almost $2.5 million in fringe benefit allowances.

Testifying as a witness for Oak Valley, Phillips took a different view: "Section 332.1 has no bearing whatsoever in this situation because section 332 involves discounts against charges in which the patient is billed directly. [¶] The [provider's self-insurance] plan is not billed; the patient is billed directly. And the provider has given a discount to the employee, but the employee is obligated to pay the full amount of the charges if the discount isn't allowed. [¶] So there's a difference between a contract directly with an employee and a contract through a [third party administrator] in which the [third party administrator] pays and processes claims. There's a stark difference. 332.1 is inappropriate."

Phillips further testified that in this case, "the Department wishes to remove the claims, the paid claims themselves, and not the discount. The discount has not been claimed by the Provider. [¶] And 332 is clear in that a provider is not entitled to claim the discount, the discount being the difference between billed charges and amount paid. [¶] And the Department has assumed that . . . and I'm not sure of the reason behind it,

23

but they're reducing and eliminating the claims themselves, rather than the discount, which is what 332 permits a provider to do if in fact there is, quote, an unrecovered cost, which we're not alleging there is."

In its final decision, DHS followed the approach taken by Juarez to the accounting guidance of section 332.1. In determining which approach to take, DHS noted that "[a]ll of the interpretations, and the conclusions reached therefrom, of these complex regulatory provisions as presented by the three witnesses are found by this tribunal to be reasonable, non-arbitrary and fair." DHS determined that its own "interpretation of sections 332 and 332.1 . . . is entitled to . . . deference . . . ." DHS further reasoned that "other than the testimony of . . . Phillips, there is little support for [Oak Valley's] conclusion that sections 332 and 332.1 apply only to discounts. The term 'discount' does not appear in either of these sections nor has [Oak Valley] offered any authority for its suggestion that sections 332 and 332.1 apply narrowly only to discounts."

The trial court came to the opposite result in ruling on the *Oak Valley II* petition for administrative mandate. The trial court determined that the Provider Reimbursement Manual "provides that the cost of 'health insurance premiums' is an allowable cost 'if the benefits of the policy inure to the employee.' (. . . § 2144.4.)" The trial court concluded that DHS's "application of section 332.1 . . . was also an abuse of discretion. Since Oak Valley's in-house claims are reimbursable under section 2162.7, there is no 'unrecovered cost' associated with Oak Valley's provision of self-insured medical coverage to its employees triggering the use of section 332.1."

## C.

### *Analysis*

At the outset of our analysis, we reiterate our conclusion that the trial court correctly determined Provider Reimbursement Manual section 2162.7 does not allow for the categorical denial of costs for a medical provider's in-house treatment under a nonqualifying self-insurance plan. (See part II, above.) Thus, the question presented by

24

this issue is whether sections 332, 332.1, and 2144.4 provide a basis for categorically denying Oak Valley's in-house medical treatments as includable costs. Oak Valley counters that section 332.1 is inapplicable because it applies only to instances in which employees are billed directly by insurance companies for medical services provided. In *Oak Valley II*, the trial court determined section 332.1 does not apply because there is no unrecovered cost under that section. In *Oak Valley III*, the trial court did not address section 332.1.

Section 2144.4 states that fringe benefits *are* "[i]ncludable as Provider's Cost" and that the provider's unrecovered cost in providing medical services for employees is such a fringe benefit. (§ 2144, p. 21-31 (rev. 375, 12-93), underscoring omitted.) Based on our conclusion that Oak Valley's in-house medical claims for its employees are reimbursable under section 2162.7, there is no "unrecovered cost" associated with Oak Valley's provision of self-insured medical coverage to its employees triggering the use of section 332.1.

And even if these sections applied to Oak Valley's nonqualifying self-insurance plan, sections 332, 332.1, and 2144.4 do not support DHS's categorical denial of Oak Valley's in-house treatment costs.

In construing sections 332, 332.1, and 2144.4, we reject DHS's claim that its interpretation is entitled to deference. As we noted in part I, above, the sections at the heart of this issue were promulgated by the federal Centers for Medicare and Medicaid Services – not by DHS. Thus, DHS is not entitled to deference in its interpretation of regulations it did not originate. (*Community Care, supra,* 412 F.Supp.2d at p. 22.)

We also reject the reasoning in DHS's final decision where it asserts that neither section 332 nor 332.1 contains the word "discount." By quoting only the beginning portion of section 332.1, DHS's final decision overlooked the fact that the section uses "discount" twice in providing examples of calculations for allowable costs. (§ 332.1, par. A, p. 3-10 (rev. 280, 01-83) & par. B, p. 3-11 (rev. 435, 03-08).) The examples of

25

section 332.1 are instructive because they show the complexity of having three separate approaches to costs for essentially the same medical treatment but that vary according to whether the treatment was provided to (1) Medicare patients, (2) non-Medicare patients, or (3) the medical provider's own employees. Section 332.1 further shows the calculation of includable costs becomes even more complex if the medical provider gives its employees a "discount" for in-house treatments.

Regarding discounts for in-house treatments of employees, section 332.1 clearly provides that the amount of the discount is not an allowable cost. Section 332.1's first example – which posits a "30% discount" on a $300 service to an employee – lists only the non-discount portion of $210 under the "costs" column. (§ 332.1, par. A, p. 3-10 (rev. 280, 01-83).) This $210 represents the amount charged *to the employee* who must pay only 70 percent of the $300 service. Once the employee has paid $210, the provider in the example is allowed to claim as a cost only $60 as an "allowable cost" for the "unrecovered cost of services furnished to employees as fringe benefits." (§ 332.1, p. 3-10 (rev. 280, 01-83).) This allowable cost reflects the following computation: The service that is "billed" as a $300 service costs the provider only 90 percent of that, i.e., $270. Of that $270 of actual cost, the employee pays $210. Subtracting the $210 employee payment from the $270 actual cost, leaves $60 of unrecovered cost that the provider may claim as an allowable cost. As a result, the provider's discount to the employee is not borne by anyone as an allowable cost.

For purposes of this case, the significance of the first example in section 332.1 is that the provider is allowed the entirety of its actual cost of $270 as an allowable cost – reduced *only* by the amount that the employee himself or herself pays. In short, section 332.1's guidance and illustrative example show two overarching concepts: (1) the provider may recover its actual costs of in-house medical services for employees, but not the "billed" cost, and (2) the provider must reduce its actual costs when claiming allowable costs to the extent that the employee paid for any part of the service.

26

Our conclusion is bolstered by section 2144.4 because it states that fringe benefits *are* "[i]ncludable as Provider's Cost" and that unrecovered costs for in-house medical services for employees is such a fringe benefit.  (§ 2144, p. 21-31 (rev. 375, 12-93), underscoring omitted.)  Likewise, section 332 confirms that "*any* costs of the services not recovered by the provider from the charge assessed the employee are allowable costs." (§ 332, p. 3-9 (rev. 280, 01-83), italics added.)  In other words, both of these sections reiterate the principle that a provider may lay claim to unrecovered costs for in-house medical treatments for employees.

We do not perceive anything in sections 332, 332.1, or 2144.4 that disallows Oak Valley from claiming costs incurred for in-house treatments of its employees under section 2162.7.

V

### *Whether Oak Valley Impermissibly Paid Itself for In-house Treatment Costs*

In *Oak Valley II* and *Oak Valley III*, the introductions to DHS's opening briefs identically assert that "Oak Valley's payments to itself contradict related party principles which prohibit providers from claiming profit and artificially inflating costs which may be generated from a less than arm's-length transaction . . . ."  The assertion, however, remains undeveloped as an argument.

In *Oak Valley II,* the only subsequent mention of related party principles is the following sentence: "These claims also represent payments Oak Valley made to itself, which are governed by the related party principles of CMS Publication 15-1, section 1000."  For lack of any explanation as to how Oak Valley's payments violate related party principles, the argument is deemed forfeited.  (*Allen*, *supra*, 234 Cal.App.4th at p. 52.)  *Oak Valley III* repeats the same sentence but also adds:  "Oak Valley's payments to itself are governed by the related party principles outlined in CMS Publication 15-1, section 1000, which prohibits providers such as Oak Valley from claiming profit."  This

27

additional sentence in *Oak Valley III* does not sufficiently develop the argument such that it is cognizable on appeal. Therefore, it too is forfeited. (*Allen*, at p. 52.)

## APPEAL BY DHS IN RIDGECREST

## VI

### *DHS's Legal Contentions in Ridgecrest*

DHS's briefing in *Ridgecrest* suffers the same ambiguities as those presented in the *Oak Valley* cases, namely that it is difficult to determine whether the arguments are presented as pure issues of law regarding the interpretation of Provider Reimbursement Manual sections, whether the arguments challenge the sufficiency of the evidence in support of the trial court's findings in favor of Ridgecrest, or whether the arguments are intended as mixed questions of law and fact.

Insofar as the contentions are legal in nature, the arguments advanced by DHS in *Ridgecrest* are substantively identical to those presented in the *Oak Valley* cases. DHS argues that Ridgecrest Regional Hospital (1) has a nonqualifying self-insurance fund for which allowable costs are only those on a claim-paid basis, (2) the costs claimed by Oak Valley are not reasonable because they "represent charges which exceed actual costs," (3) the claimed costs are also not reasonable because they run afoul of "related party principles which prohibit providers from claiming profit and artificially inflating costs which may be generated from a less than arm's-length transaction."

These contentions by DHS mesh with those advanced in the *Oak Valley* cases. Because DHS does not offer any substantively different argument for reversal in *Ridgecrest* than in the *Oak Valley* cases, the arguments all succeed or fail on the same reasoning. On the basis of our rejection of DHS's identical substantive legal arguments in the *Oak Valley* cases, we conclude DHS has not established legal error in *Ridgecrest*.

28

# VII

## *DHS Calculation of Unrecovered Costs in Ridgecrest*

In *Ridgecrest*, DHS additionally argues that it "properly allowed Ridgecrest's unrecovered costs in rendering medical services to its employees in-house by adjusting Ridgecrest's per diem rates and cost-to-charge ratios, removing days and charges related to Ridgecrest's medical services rendered to its employees in-house." This argument appears to be factual in nature because DHS claims that it properly adjusted Ridgecrest's cost claims under the circumstances of this case. Based on the briefing, we deem this issue forfeited.

As this court has previously noted: "In every appeal, 'the appellant has the duty to fairly summarize all of the facts in the light most favorable to the judgment. (*Foreman & Clark Corp. v. Fallon* [(1971)] 3 Cal.3d [875,] 881.) Further, the burden to provide a fair summary of the evidence "grows with the complexity of the record. [Citation.]" ' " (*Myers v. Trendwest Resorts, Inc*. (2009) 178 Cal.App.4th 735, 739 (*Myers*), quoting *Boeken v. Philip Morris, Inc*. (2005) 127 Cal.App.4th 1640, 1658.) When, as in this case, an appellant fails to fulfill this duty the claim is forfeited. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.)

DHS acknowledges that the trial court "relied heavily upon Ridgecrest's accounting consultant, . . . Phillips, in *finding* Ridgecrest incurred actual costs, which were not reimbursed through the cost centers of its cost report." (Italics added.) However, DHS's statement of facts does not mention Phillips or cite to any part of his testimony even though his testimony alone comprises more than a third of the transcript of the administrative hearing. DHS also omits any mention of Ridgecrest's other witness, Danny Mower. In other words, DHS's statement of facts ignores *all* of the testimony offered by Ridgecrest and relied upon by the trial court in rendering its decision. For failure to set forth the evidence in the light most favorable to the judgment, this argument is forfeited.

We note that DHS does touch on Phillips's testimony in its opening brief. However, DHS does so only to argue that the trial court misplaced its reliance on Phillips's testimony. Thus, DHS points out considerations it believes Phillips did not properly take into account in his testimony. And it criticizes his testimony for lack of authority in support. This does not suffice to " 'fairly summarize all of the facts in the light most favorable to the judgment.' " (*Myers, supra,* 178 Cal.App.4th at p. 739.)

We conclude DHS has not met its burden to summarize the facts in the light most favorable to the judgment. Therefore, this argument is forfeited.

## DISPOSITION

The judgments are affirmed. Oak Valley Hospital District and Ridgecrest Regional Hospital shall recover their costs in these consolidated appeals. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


/s/
HOCH, J.



We concur:



/s/
MURRAY, Acting P. J.



/s/
DUARTE, J.